Joseph W. LaFRANGE, III, Guardian of the Estate of Laurie LaFrange, a Minor, Movant,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION, Respondent.

Supreme Court of Kentucky.

Nov. 21, 1985.

J. Gregory Wehrman, Wehrman & Wehrman, Chartered, Covington, for movant.

J.M. Collier, Elizabethtown, for respondent.

Gregg Neal, Shelbyville, for the Kentucky Academy of Trial Attys.—amicus curiae.

LEIBSON, Justice.

On June 11, 1982, Laurie LaFrange was struck and severely injured by a motor vehicle driven by Gregory Richardson. Laurie is the minor daughter of Joseph W. LaFrange, the movant, and was residing with her parents at the time of the accident. Richardson's liability insurance carrier, Motorist Mutual, paid its policy limits of $25,000 to the movant, and obtained a covenant not to sue which specifically reserved all claims LaFrange had against his own automobile insurer, United Services Automobile Association (USAA), pertaining to underinsured motorist coverage. Motorist Mutual also paid LaFrange its maximum no-fault coverage of $10,000 for hospital and medical expenses.

Movant's automobile policy with USAA covered two vehicles. It contained an underinsured motorist endorsement with split limits coverage in the amounts of $25,000 for each person and $50,000 for each accident. A separate premium for underinsured motorist coverage of two dollars was charged for each vehicle covered by the policy.

Before settling with the tortfeasor's insurance carrier, Motorist Mutual, LaFrange notified his own carrier, USAA, that he was engaged in settlement discussions with Richardson's liability carrier, that the tortfeasor's liability limits were $25,000, and that the claim would be submitted under the underinsured motorists provision of USAA's automobile policy. USAA did nothing in response to this letter.

This is a declaratory judgment action filed by LaFrange against USAA after Motorist Mutual had paid its liability limits of $25,000. LaFrange asked the court to declare that USAA was liable to the plaintiff for underinsured motorists coverage on each vehicle insured under its policy for $25,000, in the total sum of $50,000.

The trial court dismissed the action on two grounds: (1) that there must be a judgment in favor of plaintiff, LaFrange, against the tortfeasor, Richardson, establishing the total amount of actual damages before presenting a claim against the underinsured motorist carrier, which is now impossible; and (2) the release of the tortfeasor by reason of the covenant not to sue has destroyed the insurance carrier's right of subrogation against the tortfeasor, which presumably vitiates the coverage.

On appeal, the Kentucky Court of Appeals decided both of these issues in favor of the insured, LaFrange. It held that "a judgment against the tortfeasor is not a condition precedent to the recovery of such benefits," and that "[s]ince no subrogation rights existed, no prejudice was created by the release."

Nevertheless, the Court of Appeals affirmed the trial court's judgment of dismissal based on its interpretation of the policy language. The Court of Appeals opines:

"[T]he policy limits liability to $25,000 less any sum paid because of bodily injury by persons legally responsible.... Since this amount is equivalent to the maximum liability under the underinsurance policy, the appellant is not entitled to any payment from USAA in its status as underinsurer."

We affirm the decision of the Court of Appeals.

As stated by movant's counsel at oral argument, the "crucial issue" in this case is the "offset" question. Under KRS 304.39–320, "Underinsured motorist coverage" is statutory coverage to the extent mandated by that section. Although the policy coverage may be broader, it must be, at the least, coextensive with the statute. Thus, we must look first at the statute, and then at the policy, to see whether either statute or policy provides coverage in this case. In both cases this question turns on whether the $25,000 paid by Motorist Mutual on behalf of the tortfeasor should be "offset" against the $25,000 per person limit specified on the "Declarations" sheet, or should be "offset" against a sum which represents

actual damages as determined by a finding of fact in a later law suit.

We recognize as a given the following arguments made on behalf of the movant:

1) KRS 304.39–320, "Underinsured motorist coverage," is part of the Motor Vehicle Reparations Act (MVRA), and, as such, is remedial legislation which should be generally construed to accomplish its stated purposes. cf. *Bishop v. Allstate Ins. Co.*, Ky., 623 S.W.2d 865 (1981).

2) The insurance contract must include, as a minimum, such rights and obligations as are required by the statutory language. *Meridian Mutual Ins. Co. v. Siddons*, Ky., 451 S.W.2d 831 (1970).

3) The insurance contract is a contract of adhesion, and any ambiguity in the contract language will be construed against the insurer who prepares it. *Wolford v. Wolford*, Ky., 662 S.W.2d 835 (1984).

Nevertheless, the statute cannot be construed to require rights or impose obligations not required by the statutory language; and, where the statute does not so require, the insurance contract cannot be construed to provide coverage contrary to its terms.

KRS 304.39–320 first requires that underinsured motorist coverage shall be made "available upon request" to the insured. Then the language expressing the coverage in the statutory mandate where such insurance is requested, pertinent to our inquiry, states that in "such coverage":

"[T]he insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the policy limits thereon, to the extent of the policy limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against."

The requirement on the underinsured motorist carrier to provide coverage for "uncompensated damages" is limited by the phrase, "to the extent of the policy limits on the vehicle of the party recovering less the amount paid by the liability insurer of the party recovered against." Thus, the "offset" is statutorily defined by the same words. In the present case the "policy limits on the vehicle of the party recovering" is specified on the "Declarations" sheet as "each person $25,000." The "amount paid by the liability insurer of the party recovered against," is specified in the "Covenant Not To Sue" as $25,000. When we offset $25,000 against $25,000, the remainder is zero.

Although KRS 304.39–320, "Underinsured motorist coverage," uses the term "uncompensated damages," that term is limited in explicit and unmistakable terms. Where the insured's policy limits and the tortfeasor's policy limits are coextensive, the insured's damages, however extensive, do not trigger the policy coverage.

Of course, the insurance contract may provide broader coverage than that required by the statute. The question is, did it do so in this case? The underinsured motorist coverage endorsement in the policy provides:

"LIMIT OF LIABILITY

The limit of liability shown in the Schedule or in the Declarations for 'each person' for Underinsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one accident. . . .

. . . .

However, the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."

This policy language states, again in unmistakable terms, that the $25,000 limit of liability stated in the policy Declarations "shall be reduced by" the $25,000 paid on behalf of the tortfeasor by his insurance

carrier, Motorist Mutual. There is no ambiguity open for interpretation.[1]

Counsel for the insured argues that if an offset is to be made for the payment on behalf of the tortfeasor by his liability insurance carrier, it should be against the total damages suffered by the insured as later determined by the trier of fact, rather than against the liability limits in the tortfeasor's policy. The only case offered to support such a position is *Gomolka, Exrx. v. State Automobile Mutual Ins. Co.*, 472 N.E.2d 700 (Ohio 1984). This opinion is confused and impossible to understand in the context of our Kentucky statute and the contract of insurance in our case. On the other hand, *Hall v. Liberty Mut. Ins. Co.*, 376 So.2d 1183 (Fla.App.1979), applying the Florida statute, supports our decision:

> "Hall's [the insured's] UMI coverage is the amount by which his damage or his UMI limits, whichever is less, exceeds the amount recovered from the tortfeasor's insurer." 376 So.2d at 1184.

KRS 304.39–320 contemplates the insured will have the right to provide insurance coverage for the vehicle of a prospective tortfeasor in the same amount as the liability coverage he purchases for his own. This is a fixed amount rather than an unlimited amount.

We note that the policy language in the present case is broader than the statutory language in that the policy provides for an offset for *"all sums paid* because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."* (Emphasis added). The statutory language is limited to "the amount paid by the liability insurer of the party recovered against." Since under the facts of this case "all sums paid" on behalf of the tortfeasor and the amount "paid by the liability insurer" are the same, we do not address what would happen if they were different.

We have been asked by counsel to address a number of unanswered problems which have surfaced in this case: (1) the question of stacking because a separate two dollar premium for underinsured motorist coverage was charged for each vehicle; (2) what consequences flow from effecting a partial settlement with the tortfeasor in which the full amount of damages remained undecided; and (3) when subrogation rights in favor of the underinsured motorist carrier are created and how, if at all, they may be accommodated within a system of underinsured motorist coverage. Because the facts of this case do not cross the threshold question posed by the "offset" language in the statute and in the policy, we do not reach these further questions. Nothing in this opinion shall be construed as deciding any of these problems.

Finally, the 1984 Amendment of KRS 304.39–110 raises the minimum tort liability insurance limits for bodily injury sustained by any one person from $10,000 to $25,000. If the policy in the present case had been written after the 1984 Amendment, we would be presented with a question of whether the insured had paid premiums for underinsured motorist insurance that provided no benefits. However, at the time of this case the insured was subject to injury caused by a tortfeasor who had only the minimum limits of $10,000 in liability coverage, in which instance the insured's underinsured motorist coverage would have provided valuable additional coverage. Once again, we need not and do not address this problem, because it does not arise in the context of this case.

The decision of the Court of Appeals is affirmed.

STEPHENS, C.J., and AKER, GANT, LEIBSON, STEPHENSON and WINTERSHEIMER, JJ., concur.

VANCE, J., dissents.

---

1. The form letter from USAA explaining different coverages: (1) was not part of the policy; and (2) created no ambiguity in the meaning of the policy.