BEACON INSURANCE COMPANY OF AMERICA, American Select Insurance Company, Appellants,

v.

STATE FARM MUTUAL INSURANCE COMPANY, Earl Mains and Marjorie Mains, and Ricky Barger, Appellees.

No. 89–SC–467–DG.

Supreme Court of Kentucky.

Sept. 6, 1990.

Otto Daniel Wolff, Covington, for appellants.

Gregory M. Bartlett, Edgewood, for appellee, State Farm Mut. Ins. Co.

Justin D. Verst, Newport, for appellees, Earl Mains and Marjorie Mains.

Edward J. Winterberg, Covington, for appellee, Ricky Barger.

COMBS, Justice.

We granted review of the Court of Appeals opinion which reversed a summary judgment of the Kenton Circuit Court. The issue to be determined is the validity of a provision of an insurance policy purporting to exclude a named driver.

On October 1, 1984, Mitchell and Barbara Barger obtained an insurance policy from appellants. This policy, signed by both parties, was standard with one exception: it carried an endorsement entitled "named driver exclusion," meant specifically to exclude from coverage Ricky Barger, the son of Mitchell and Barbara.

On October 20, 1984, while driving his mother's car, with her permission, Ricky was involved in an accident in which Marjorie Mains was injured. Because of the named driver exclusion endorsement, Beacon Insurance and American Select denied liability coverage and declined to defend.[1] The issue was presented to the trial court by means of the insurance providers' motion to intervene in the action for damages filed by Marjorie Mains and her husband. The providers sought a declaratory judgment that no liability coverage was owed.

---

1. In fact, Ricky was a named insured on a separate policy issued by Progressive Casualty Insurance Company. An Ohio court, for reasons not made clear to this Court, ruled that policy to be inapplicable.

In response, State Farm Mutual Automobile Insurance Company, the insurance carrier for the Mains, filed an intervening complaint claiming that coverage was owed by Beacon Insurance and American Select.

The trial judge entered summary judgment in favor of Beacon Insurance and American Select to the effect that the providers did not owe liability coverage for Ricky. The result of this ruling is that Ricky in essence becomes an uninsured motorist, thus making State Farm liable to their own insureds, the Mains, under the uninsured motorist provisions of their policy.

State Farm seeks to recoup from Beacon and American Select the sums which it has paid to its insureds under this coverage. State Farm contends that the named driver exclusion should be declared void and unenforceable to the extent that it renders Ricky uninsured in spite of compulsory statutory minimum limits. In disposing of this aspect of the case, the Court of Appeals said:

> The case of *Bishop v. Allstate Insurance Co.*, [Ky., 623 S.W.2d 865 (1981)] is dispositive of the issue and requires this result. In that case the Kentucky Supreme Court examined the validity of "household" exclusionary clauses under the MVRA. Such exclusions had long been upheld as valid in Kentucky under the prior statutory insurance schemes. However, the court determined that the purpose and espoused policy of MVRA was to make compulsory certain minimum limits of insurance coverage. Any exclusion which diluted or eliminated those minimum coverages was determined to be void and unenforceable. The case of *Mosley v. West American Insurance Co.*, Ky.App., 743 S.W.2d 854 (1987), reaffirms and reenforces this policy.
>
> The MVRA is remedial legislation and thus is to be construed to accomplish its stated purposes. *LaFrange v. United Services Auto Ass'n.*, Ky., 700 S.W.2d 411 (1985). Accordingly, to the extent that a named driver exclusion operates to render a driver uninsured as to the compulsory statutory minimum limits, the exclusion is void and unenforceable but not beyond them. That is, we believe the exclusion is valid as to the portion of the limits beyond the minimums. *Staser v. Fulton*, Ky.App., 684 S.W.2d 306 (1985).

In seeking reversal, counsel for appellants at oral argument stressed four points: (1) the case of *Bishop v. Allstate Insurance Company, supra,* is inapplicable to the case at bar; (2) the holding of the Court of Appeals interferes with the parties' right to contract freely; (3) the recently enacted House Bill 98 has established a new public policy for the state; and (4) the opinion in *United States Fire Insurance Company v. Kentucky Truck Sales, Inc.,* 786 F.2d 736 (6th Cir.1986), is dispositive of this case.

We disagree with all four contentions. While the *Bishop* case was slightly different from the instant case, it presented a clear and accurate enunciation of the express legislative intent set forth in the MVRA (KRS Chapter 304, Subtitle 39), and its rationale is equally appropriate here. And while the right to contract is one of the most basic rights possessed by the citizenry, this right must however yield to the public policy of the state as declared by our General Assembly. To permit an exclusion such as that claimed by these appellants, in light of the statute as it existed at the time of contracting, at the time of the accident and at the time of trial, would tend to emasculate the act and defeat its express purpose. KRS 304.39–010(1) purposes to require, and KRS 304.39–080(5)[2] does require, security for payment of tort liabilities arising from maintenance or use of a motor vehicle. KRS 304.39–110 establishes

---

**2.** With certain exceptions not relevant to the present case, "every owner of a motor vehicle registered in this Commonwealth or operated in this Commonwealth by him *or with his permission,* shall continuously provide *with respect to the motor vehicle* while it is either present or registered in this Commonwealth ..., security for the payment of basic reparation benefits in accordance with this subtitle and security for payment of tort liabilities, arising from maintenance or *use of the motor vehicle."*

the minimum compulsory security. KRS 304.39-150 subjects all policies and terms to approval by the Commissioner of Insurance, who "shall approve only terms and conditions consistent with the purposes of this subtitle and fair and equitable to all persons whose interests may be affected."

In view of these statutes, as we concluded in *Bishop:* "Such an exclusion provision is invalid because it effectively renders a motor vehicle owner or operator uninsured and thereby violates the legislatively mandated public policy of compulsory insurance." 623 S.W.2d at 865.

Appellant's third argument is that HB 98 is controlling. This bill, introduced on January 16, 1990, created a new section of subtitle 39 of KRS Chapter 304, reading as follows:

> In an automobile liability insurance policy, the insurer and the named insured may agree to exclude any member of the household not a spouse or a dependent from coverage as the operator of an insured vehicle. The names of persons excluded shall be set forth in the policy or in an endorsement that is signed by both parties.

This law did not become effective until July 13, 1990, whereas the insurance contract here in question was issued in October 1984, and the accident and injury occurred in October 1984. There is no legal basis for asserting the public policy embodied in this statute as controlling transactions which occurred prior to its effective date. Had the legislature intended such effect, it could have and, we trust, would have expressly provided that the statute be given retroactive effect, as required by KRS 446.080(3).

The case of *United States Fire Insurance Company, supra,* is easily distinguishable from the case sub judice. The insurance policy involved there expressly excluded "covered automobiles while used in any professional or organized racing or stunting activity." In sustaining the exclusion the court found that the insured vehicle was being used at a "truck pull" at the Kentucky Fair and Exhibition Center in Freedom Hall in Louisville and violated the "stunting activity" prohibition contained in the policy. The purpose of the MVRA is expressed in the Act as follows:

> The toll of about 20,000,000 motor vehicle accidents nationally and comparable experience in Kentucky upon the interests of victims, the public, policy-holders and others require that improvements in the reparations provided for herein be adopted to effect the following purposes:
>
> (1) To require owners, registrants and operators of motor vehicles in the Commonwealth to procure insurance covering basic reparation benefits and legal liability arising out of ownership, operation or use of such motor vehicles;
>
> . . . .

KRS 304.39-010.

The act is obviously directed more strongly toward effective reparations for victims of motor vehicle mishaps occurring on public ways, streets and thoroughfares; an exclusion applying to activities on race tracks or similar facilities is patently less offensive to the policies of the MVRA than the exclusion urged by these appellants.

For the foregoing reasons, we affirm the opinion of the Court of Appeals.

STEPHENS, C.J., and GANT, LAMBERT, LEIBSON and VANCE, JJ., concur.

WINTERSHEIMER, J., files a separate concurring opinion.

WINTERSHEIMER, Justice, concurring.

I concur with the result achieved by the majority opinion that the decision of the Court of Appeals should be affirmed and that the named driver exclusion endorsements are invalid and unenforceable as contrary to public policy of compulsory minimum liability insurance pursuant to the Kentucky Motor Vehicle Reparations Act.

One of the principal purposes of the MVRA is to require owners and operators of motor vehicles to obtain liability insurance. K.R.S. 304.39-020(1); K.R.S. 304.39-080(5). The law specifies the minimum amounts of coverage which are required

and the legislature allowed for no exclusions from minimum coverage although it could have done so. *Bishop v. Allstate Ins. Co.*, Ky., 623 S.W.2d 865 (1981) noted that the legislature established for the first time a system of compulsory liability insurance for owners and operators of motor vehicles. *Bishop, supra,* held that a household or family exclusion clause in an automobile insurance policy was void and unenforceable and contrary to the purpose of compulsory insurance, *Staser v. Fulton,* Ky.App., 684 S.W.2d 306 (1984) held that a household exclusion would be void only to the extent that such a clause would eliminate the required minimum liability insurance. Such an exclusionary clause could be enforced to reduce an insurer's liability coverage limits to the statutory minimum. The *Bishop* holding was again followed in *Mosley v. West American Ins. Co.,* Ky. App., 743 S.W.2d 854 (1987) when the Court of Appeals refused to enforce a policy exclusion for intentional acts. As argued by State Farm, there appears to be a growing number of cases throughout the nation which have invalidated exclusionary clauses in automobile liability insurance policies. *See Cotton States Mutual Ins. Co. v. Neese,* 254 Ga. 335, 329 S.E.2d 136 (1985); *Iowa Mutual Ins. Co. v. Davis,* 231 Mont. 166, 752 P.2d 166 (1988).

Initially this case seems to be a dispute between two insurance companies but the crucial issue is whether a named driver exclusion endorsement should be allowed in automobile liability insurance contract. Clearly the public policy of Kentucky is to require automobile insurance. The rights and duties of all persons involved are the legitimate concern of state government. There are situations where members of the public who are innocent victims of automobile accidents could be uncompensated or only marginally compensated for their injuries or damage if such exclusions were not declared void. *Cf. Neese, supra.*

The coverage and cost of automobile insurance is a matter of almost universal public concern. It is the responsibility of government at every level to be sure that the responsibility for fair and equitable automobile insurance coverage be carefully reviewed. Public policy matters are the responsibility of the legislature but the court is charged with the duty to determine that the public policy established by the legislature is equitably enforced.