**PHILADELPHIA INDEMNITY INSURANCE COMPANY,**
Appellant,

v.

**Stephen W. MORRIS, Medora Sanitation, Inc.,**
Appellees.

No. 97–SC–887–DG.

Supreme Court of Kentucky.

April 22, 1999.

Raymond G. Smith, Boehl Stopher & Graves, Louisville, KY, for appellant.

Barry Willett, Weiss Frederick Willett & Haynes, P.S.C., Louisville, KY, Charles H. Zimmerman, Jr., Louisville, KY, Bernard F. Lovely, Jr., Vimont & Wills, PLLC, Lexington, KY, for appellees.

Mark K. Gray, O'Koon, Menefee & Gray, Louisville, KY, Richard Hay, Somerset, KY, for Amicus Curiae, Kentucky Academy of Trial Attorneys.

LAMBERT, Chief Justice.

This case presents questions of first impression in this Commonwealth regarding the relationship between workers' compensation benefits and underinsured motorist coverage. The first issue is whether KRS 342.690(1), the exclusive remedy provision of the Kentucky Workers' Compensation Act, bars an employee from recovering underinsured motorist ("UIM") benefits from his employer's motor vehicle insurance policy. The second issue is whether a provision in the employer's UIM endorsement, which requires that workers' compensation benefits be reduced or "set off" against the UIM policy limits, violates public policy and is thereby unenforceable.

On December 20, 1993, Stephen Morris was struck and injured by a vehicle while he was loading refuse onto a sanitation truck owned by his employer, Medora Sanitation, Inc. ("Medora"). At the time of the injury, the sanitation truck was covered by a liability insurance policy purchased by Medora and issued by Philadelphia Indemnity Insurance Company ("Philadelphia"). Morris suffered traumatic injuries from the accident, including the severance of his right leg and a closed head injury. Since Morris was working within the scope of his employment at the time of the accident, the workers' compensation carrier for Medora made voluntary payments to Morris of approximately

$200,000 in medical expenses and wage loss benefits.

On August 30, 1994, Morris filed a civil action in Jefferson Circuit Court against William Tedford, the party who caused Morris' injuries. Tedford's liability insurer, Allstate Insurance Company, subsequently tendered its policy limits of $25,000 to Morris pursuant to a settlement agreement, and the claim against Tedford was dismissed. On April 3, 1995, Morris added Philadelphia as a party defendant and sought a declaration of rights as to whether he was entitled to underinsured motorist (UIM) benefits pursuant to the policy issued to Medora. Morris claimed that he should receive the UIM limits of $100,000 because his damages exceeded by at least that amount the workers' compensation benefits he had received and the policy limit paid by Tedford's insurer.

Morris and Philadelphia filed cross-motions for summary judgment. On June 4, 1996, the Jefferson Circuit Court dismissed Morris' amended complaint and entered an order granting summary judgment to Philadelphia on the narrow issue of the exclusive remedy provision of KRS 342.690(1). The trial court held that the Kentucky Workers' Compensation Act provided Morris with an exclusive remedy and thus barred recovery of UIM benefits under the Philadelphia policy. The Court of Appeals, in a unanimous opinion, reversed and remanded. This Court granted discretionary review, and for the reasons stated hereinafter, we affirm the Court of Appeals' opinion.

## I. KRS 342.690(1): THE EXCLUSIVE REMEDY PROVISION OF THE WORKERS' COMPENSATION ACT

The Kentucky Workers' Compensation Act is predicated on the concept of 'no-fault' liability. Each employer subject to the Act agrees to pay both lost wages and medical expenses to an employee injured on the job. In return, each employee subject to the Act relinquishes all common law claims against the employer arising out of a work-related injury. *See, e.g., Zurich*

*Insurance Company v. Mitchell*, Ky., 712 S.W.2d 340, 341 (1986); *General Accident Insurance Company v. Blank*, Ky.App., 873 S.W.2d 580, 581 (1993). Under the Act, the employer's liability is exclusive.

The exclusive remedy provision of the Act states in relevant part:

> If an employer secures payment of compensation as required by this chapter, the *liability of such employer* under this chapter shall be exclusive and in place of all other *liability of such employer* to the employee, his legal representative, ... and anyone otherwise entitled to *recover damages from such employer* at law .. on account of such injury or death.

KRS 342.690(1) (emphasis added). Philadelphia contends that this provision precludes recovery of UIM benefits from the employer's policy when workers' compensation benefits have been paid. In the Court of Appeals, the statute was interpreted as establishing an exclusive remedy against an employer only when the employer is legally liable for the injuries sustained. It reasoned that since legal liability was upon the third party tortfeasor, Tedford, and not the employer, Medora, that KRS 342.690(1) did not bar Morris from recovering under Medora's UIM coverage. Central to the view of the Court of Appeals was that UIM coverage was not payable as a result of the policy owner's tort liability, but payable by virtue of a contract.

■ Philadelphia contends that KRS 342.690(1) precludes recovery of UIM benefits by Morris regardless of whether such coverage is based on contract or tort. Philadelphia urges this Court to follow the rationale expressed in *Berger v. H.P. Hood, Inc.*, 416 Mass. 652, 624 N.E.2d 947 (1993), a Massachusetts case in which the court held that the workers' compensation exclusive remedy provision could not be avoided merely by characterizing the claim as contractual. In *Berger*, the court stated:

The plaintiff's UM claim derives from the same incident, a personal injury sustained in the course of employment, which gave rise to the payment of Workers' compensation. Merely characterizing the claim as contractual does not alter the essential nature of this common law claim. Hood, if required to pay UM benefits, still would be paying a worker for an injury sustained in the course of employment.

*Id.* at 949 (citation omitted). The court then concluded that for liability purposes, the employer and the insurance company were synonymous, stating

Any suit against Fund and First is essentially a suit against Hood, as an owner of the policies. We have determined that suits against Hood are barred by [the exclusivity provision of the Workers' Compensation Act]. Thus, summary judgment in favor of First and Fund on Hood's UM coverage was appropriate.

*Id.* at 950.

■■■ We decline to follow *Berger* for the reason that the UIM coverage at issue here is not based on Medora's legal liability. Morris' UIM claim was against Philadelphia, the UIM insurance carrier, not against his employer, Medora. Medora's legal liability is unaffected. As stated in *Coots v. Allstate Insurance Co.*, Ky., 853 S.W.2d 895, 903 (1993), a "suit to recover UIM coverage is a direct action" against the UIM carrier and "the [UIM] carrier alone is the real party in interest in UIM cases." Furthermore, under Kentucky law UIM coverage is contractual in nature. This principle is stated in *State Farm Mutual Insurance Co. v. Fireman's Fund American Insurance Co.*, Ky., 550 S.W.2d 554, 557 (1977):

[P]ayment made in performance of a contractual obligation is not payment of "damages." Hence the liability of an insurance company under its uninsured motorist coverage cannot be "legal liability for damages."

The UIM coverage at issue was voluntarily purchased by Medora, presumably to apply in cases such as this. KRS 342.690(1) does not preclude recovery of UIM benefits, since it only protects the employer, not its UIM insurance carrier.

## II. SETOFF

■■■ The UIM endorsement in the insurance policy here includes a provision which undertakes to reduce or setoff workers' compensation benefits against the UIM policy limits. Specifically, the provision states:

Limit of Insurance

2. Any amount payable for damages under this coverage shall be reduced by:

a. All sums paid or payable under any workers' compensation, disability benefits or similar law . . .

The Court of Appeals held that this setoff provision was void as it violated the public policy of broad UIM coverage in this Commonwealth. Philadelphia contends that the offset provision does not violate public policy, and that the "doctrine of reasonable expectations," a rule of construction applied to ambiguous insurance policies, prohibits Morris' recovery of UIM benefits under the Philadelphia policy. Under this doctrine, an insured is entitled to have an ambiguous policy interpreted so as to provide all the coverage the insured may reasonably expect to have under the policy. *Ohio Casualty Insurance Company v. Stanfield*, Ky., 581 S.W.2d 555, 558 (1979); *Simon v. Continental Insurance Co.*, Ky., 724 S.W.2d 210, 212 (1986); *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Co.*, Ky., 814 S.W.2d 273, 277 (1991). However, "a conspicuous, plain and clear manifestation of the [insurance] company's intent to exclude coverage will defeat that expectation." *Simon* at 212. The Court in *Ohio Casualty* noted a further refinement of this doctrine: that only a named insured, as a party to the contract, may have reasonable expectations regarding the extent of coverage under the policy; that an insured of the second class, who is not a

party to the contract, may not rely on reasonable expectations' so as to avoid a policy's liability limitations clause. 581 S.W.2d at 558–559.

Philadelphia further contends that Morris, likewise, cannot avoid the limitations clause in the UIM endorsement because an insured of the second class could not have reasonable expectations regarding the extent of his coverage under the Philadelphia policy. Although the distinction between insureds of the first and second classes determined the outcome of the claim in *Ohio Casualty*, 581 S.W.2d at 557–559, the distinction does not affect the result of the case *sub judice*. In *Ohio Casualty*, the crucial issue was whether a police officer, who was injured when an automobile driven by an uninsured motorist collided with his police motorcycle, could 'stack' the uninsured coverages of all 63 vehicles covered by his employer's automobile fleet insurance plan. 581 S.W.2d at 555. The Court noted that the injured police officer was not a named insured, or an insured of the first class, but rather was an insured of the second class as to his employer's policy since he was merely the driver of a vehicle insured by the policy. *Id.* at 559. As such, he was precluded from stacking the coverages of all vehicles in his employer's policy. *Id.* The "reasonable expectations" argument against stacking in *Ohio Casualty* does not translate effectively into the facts of this case, in which an employee seeks the coverage afforded by a single one of his employer's vehicles. The Philadelphia policy language expressly includes UIM coverage for named insureds as well for anyone else occupying the vehicle. Since the named insured was a corporation and the vehicle insured was a business vehicle which would be forseeably operated by an employee of the corporation, we discern little currency in the argument that the employee was not intended to be benefitted by the UIM coverage bought and paid for by the employer. If we should hold as urged by Philadelphia that UIM coverage was available only to insureds of the first class,

the coverage here would be utterly illusory as the named insured was a corporation and not a proper person. Thus, we decline to extend the second class insured exception of the reasonable expectations doctrine to the facts of this case.

The prevailing Kentucky UIM statute, in effect at the time of the collision, states:

(1) As used in this section, "underinsured motorist" means a party with motor vehicle liability insurance coverage in an amount less than a judgment recovered against that party for damages on account of injury due to a motor vehicle accident.

(2) Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage *not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury* due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon, *to the extent of the underinsurance policy limits on the vehicle of the party recovering.*

KRS 304.39–320 (emphasis added). This statute requires that an insurance company pay its own insured for uncompensated damages to the extent of the UIM policy limit. It is a longstanding rule that "provisions required by statute are treated as being a part of the policy the same as if expressly written there." *Meridian Mutual Insurance Company v. Siddons*, Ky., 451 S.W.2d 831, 833 (1970) (*citing Tharp v. Security Insurance Co.*, Ky., 405 S.W.2d 760 (1966); *Maryland Casualty Co. v. Baker*, 304 Ky., 296, 200 S.W.2d 757 (1947)). The express mandate of KRS 304.39–320 that an insurance company pay the insured uncompensated damages to the extent of the UIM policy limits thus cannot be circumvented by a contract pro-

vision requiring setoff of workers' compensation benefits. Such a contract provision would contravene the direct language of KRS 304.39–320 and defeat its purpose of paying uncompensated damages. Moreover, any term or condition in a UIM policy may not be inconsistent with the fundamental requirements of the statute.

 Furthermore, the UIM endorsement requiring setoff is in direct opposition to Kentucky public policy regarding UIM coverage. There are two currently prevailing policy views. *See Royal Insurance Company v. Cole,* 13 Cal.App.4th 880, 16 Cal.Rptr.2d 660 (1993); William P. Chesser, *A Motorist is Underinsured Under Texas Insurance Code Article 5.06–1.92(b) Whenever His Liability Insurance Proceeds Are Insufficient To Compensate For The Injured Party's Actual Damages: Stracener v. United Services Automobile Association,* 21 Texas Tech L.Rev. 2249 (1989–1990); Stephen Means, *Underinsured Motorist Coverage in Iowa: American States Insurance Co. v. Tollari,* 71 Iowa L.Rev. 1569 (1986). Under the narrow view, the insured's UIM coverage is always setoff or reduced by the tortfeasor's liability limits. The purpose of the narrow view is to place the insured in the same financial condition that he would be in if the tortfeasor had liability limits equal to the insured's own UIM limits. Under the broad view, UIM coverage is triggered when the insured's damages exceed the tortfeasor's liability limits, at which point the insured is entitled, if damages require it, to receive the full amount of the UIM policy. The public policy underlying the broad view is to provide full recovery to the injured party.

Prior to July 15, 1988, KRS 304.39–320 contained additional language at the end, which was removed by the 1988 legislation. The former version of KRS 304.39–320 stated in relevant part,

> Every insurer shall make available upon request to its insureds underinsured motorist coverage, whereby subject to the terms and conditions of such coverage not inconsistent with this section the insurance company agrees to pay its own insured for such uncompensated damages as he may recover on account of injury due to a motor vehicle accident because the judgment recovered against the owner of the other vehicle exceeds the liability policy limits thereon, to the extent of the underinsurance policy limits on the vehicle of the party recovering *less the amount paid by the liability insurer of the party recovered against.*

(italicized section was removed by the 1988 legislation). KRS 304.39–320, as it was prior to 1988, afforded a mandatory setoff of a tortfeasor's liability limits against the insured's UIM limits. *See LaFrange v. United Services Automobile Association,* Ky., 700 S.W.2d 411, 413 (1985). This pre–1988 setoff provision had a twofold effect. First, it activated UIM coverage only when the tortfeasor's liability limits were less than the UIM policy limits. Second, it decreased the UIM benefits by the amount of the tortfeasor's liability coverage. *See Id.* at 413.

 Our previous version of KRS 304.39–320 clearly was an example of the narrow view of UIM coverage. The 1988 revision of the statutory language, however, transformed the statute into a representation of the broad view. The effect of the 1988 revision was to make available the policy limit of UIM coverage to the insured. *See Coots v. Allstate Insurance Co.,* Ky., 853 S.W.2d 895, 900 (1993) (stating that the "1988 change in statutory language eliminated the offset problem"). As the 1988 revision reflects a public policy of broad UIM coverage, the purpose of which is to provide full recovery for the insured, we now hold that an insurance carrier cannot set off workers' compensation benefits against the policy's face amount of UIM coverage. To do so would be to violate the public policy of this Commonwealth as clearly expressed by the legislative revision of KRS 304.39–320.

In its opinion, the Court of Appeals decided an issue which the parties here have

not presented. That issue was whether there should be a setoff of workers' compensation benefits against the total amount of damages incurred to determine the extent to which there remains uncompensated damages per KRS 304.39–320(2). The Court of Appeals held that there should be a setoff against the insured's total amount of damages, not a setoff against the face amount of UIM coverage. It reasoned that under this approach, double recovery of identical elements of loss would be denied and the insured would be permitted to recover both workers' compensation benefits and UIM benefits to the extent that the combined amount of such recovery did not exceed the total amount of damages.

As this issue was not presented for our review, we will not decide it. We observe, however, that on remand the parties will be bound by the Court of Appeals' view of this issue by virtue of the law of the case doctrine.

For the foregoing reasons, we affirm the Court of Appeals.

GRAVES, STUMBO and WINTERSHEIMER, JJ., concur.

STEPHENS, J., dissents by separate opinion in which COOPER and JOHNSTONE, JJ., join.

STEPHENS, Justice, dissenting.

I agree with the majority that KRS 342.690 does not preclude recovery of UIM benefits in this case, but I do not believe that the limitations clause in the UIM endorsement is unenforceable and violative of public policy. While the former version of KRS 304.39–320 required the set off of a tortfeasor's liability limits against the insured's UIM limits, the new statute neither requires nor prohibits such set offs. The statute authorizes optional, not mandatory, supplemental UIM coverage, and I see nothing in it that prohibits the parties from agreeing to reduce that supplemental coverage by the amount of workers' compensation benefits. There is nothing in-

herently objectionable about offsets against the limits of an insurance policy. The language of the insurance contract between the parties was clear and unambiguous. Philadelphia Indemnity Insurance Company (Philadelphia) was entitled to a setoff against the workers' award for sums paid under the policy. Unfortunately, because the amount Morris sought from Philadelphia was exceeded by the workers' compensation benefits awarded to him, Morris would be unable to recover his noneconomic losses while Philadelphia would avoid all supplemental liability for his uncompensated damages. I believe, however, that the public policy concerns raised by this anomalous result are best addressed by the General Assembly, which alone has the power to proscribe such contractual set offs. Therefore, I would reverse the Court of Appeals.

COOPER and JOHNSTONE, JJ., join this dissenting opinion.