**KENTUCKY FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant**

v.

**Belinda K. RYAN, Kevin J. Kruer, and Mary Jo Lesak, Co–Executors of the Estates of Lawrence J. Kruer and Mildred L. Kruer, Appellees.**

No. 2003–SC–0944–DG.

Supreme Court of Kentucky.

Nov. 23, 2005.

Michael E. Krauser, Eric S. Moser, Krauser & Brown, Louisville, Counsel for Appellant.

Jeffrey L. Freeman, Tyler S. Thompson, Martin H. Kinney, Jr., Dolt, Thompson, Shepherd & Kinney, PSC, Louisville, Counsel for Appellees.

Robert L. Steinmetz, W. Douglas Kemper, Frost Brown Todd, LLC, Louisville, Counsel for Amicus Curiae, Kentucky Defense Counsel.

A. Campbell Ewen, William P. Carrell II, Ewen, Kinney & Rosing, Louisville, Counsel for Amicus Curiae, Property Casualty Insurers Association of America.

Opinion of the Court by Justice JOHNSTONE.

This case stems from an automobile accident that occurred on May 21, 1998, on Interstate 64 near Shelbyville, Kentucky. Charles Ashby, traveling in the westbound lane, was attempting to pass a truck when a motorcyclist veered in front of him. Ashby lost control of his vehicle and crossed the median, colliding with an eastbound vehicle driven by Lawrence Kruer. Kruer and his wife, Mildred, were killed instantly. The motorcyclist continued westbound on I–64 and was never identified.

Appellees, the estates of Lawrence and Mildred Kruer, settled with Ashby's insurer for liability policy limits and thereafter instituted the instant action against Appellant, Kentucky Farm Bureau Mutual Insurance Company (hereinafter "KFB") for underinsured motorist (UIM) coverage provided under the Kruers' policy. In its answer, KFB maintained that the accident was caused in whole, or in part, by the actions of the motorcyclist, and that KFB was entitled to apportion fault to the unknown individual. Subsequently, the trial court permitted KFB to file a third party complaint against this "unknown motorcyclist," who was constructively served via warning order attorney. In response to KFB's third party complaint, Appellees amended their complaint to claim uninsured motorist (UM) coverage from KFB based on the alleged actions of the motorcyclist. KFB, in turn, argued that the motorcyclist was not an uninsured motor vehicle because the "hit and run" policy provision required physical contact between the motorcycle and the Kruers' vehicle, which was never alleged.

The matter proceeded to a jury trial on November 26, 2001. At the close of the evidence, the trial court dismissed the UM claim against KFB, finding that there was no evidence of any physical contact between the Kruers' vehicle and the motorcyclist. Further, over Appellees' objection, the jury was instructed to apportion fault between Ashby and the motorcyclist. The jury returned a unanimous verdict apportioning fifty percent of the fault to Ashby and fifty percent to the motorcyclist, and awarding gross damages of $350,668 to Lawrence Kruer and $107,322 to Mildred Kruer. After reducing for apportionment and the amounts paid by Ashby's liability carrier, the trial court entered a judgment of $78,334 to Lawrence Kruers' estate. Because the award to Mildred's estate was less than the payment by Ashby's carrier, the trial court entered a judgment dismissing Mildred's UIM claim against KFB.

Appellees appealed the issue of apportionment, as well as the validity of KFB's "physical contact" requirement for UM

coverage. The Court of Appeals reversed the trial court's ruling on apportionment, holding that KRS 411.182 does not permit apportionment of fault against a nominal party who is not subject to personal liability. As a result, the court did not reach the issue concerning the dismissal of the UM claim under the "physical contact" language of KFB's policy.[1] This Court thereafter granted KFB's motion for discretionary review. For the reasons discussed herein, we now reverse the decision of the Court of Appeals and reinstate the judgment of the Shelby Circuit Court.

■ The Court of Appeals essentially decided two issues in this case. First, it concluded that although KFB's liability for UIM coverage is contractual in nature, the measure of that contractual liability sounds in tort law, thus implicating Kentucky's apportionment statute, KRS 411.182. Second, it determined that KRS 411.182 does not permit apportionment against an unknown tortfeasor who, while nominally a party to the action, is neither before the court nor subject to personal liability. The court opined that the statute, while not expressly defining the term "party," limits allocation of fault to those who actively assert claims, offensively or defensively, as parties in the litigation or who have settled by release or agreement, thus excluding constructively served parties such as the unknown motorcyclist in this case.

■ We do not agree with the Court of Appeals' restrictive interpretation of the procedural nature of KRS 411.182, and, in particular, what constitutes a party subject to allocation of fault. However, we need not reach the substance of the issue because we conclude that the statute expressly does not apply to contractual claims, including those for UIM and UM coverage.

■ KRS 411.182, entitled Allocation of fault in tort actions, provides, in pertinent part:

> ("1) *In all tort actions,* including products liability actions, involving fault of more than one party to the action, including third-party defendants and persons who have been released under subsection (4) of this section . . . ."

(Emphasis added). By its plain language, KRS 411.182 limits itself to tort actions. An unambiguous statute is to be applied without resort to any outside aids. *Delta Air Lines, Inc. v. Commonwealth, Revenue Cabinet,* 689 S.W.2d 14 (Ky.1985). *See also Gateway Construction Co. v. Wallbaum,* 356 S.W.2d 247 (Ky.1962). This Court has repeatedly held that statutes must be given a literal interpretation unless they are ambiguous and if the words are not ambiguous, no statutory construction is required. *See McCracken County Fiscal Court v. Graves,* 885 S.W.2d 307 (Ky.1994); *Commonwealth v. Shivley,* 814 S.W.2d 572 (Ky.1991).

Despite the unambiguous language of KRS 411.182, the Court of Appeals nonetheless determined that it applies to contractual cases that "sound in tort," such as UM and UIM claims. Further, Appellees point out that KRS 411.182 is a selective adoption of the provisions of the Uniform Comparative Fault Act (UCFA) of 1977, formulated by the Commission on Uniform State Laws. UCFA § 2(a) specifically states that the Act governs "*all actions* involving the fault of more than one party to the action . . . ." (Emphasis added). Contrary to Appellees' assertion, however, our legislature did not adopt § 2(a) verba-

---

1. Appellees acknowledge that this Court's recent decision in *Burton v. Farm Bureau Ins. Co.,* 116 S.W.3d 475 (Ky.2003) resolves this issue in favor of KFB, and have thus declined to address it herein.

tim, but rather embraced the more restrictive language "in all tort actions ... involving fault of more than one party to the action ...." Thus, we are of the opinion that the legislature was quite clear in its intent to exclude contract actions, including those for UM and UIM coverage, from the scope of KRS 411.182. And while we certainly agree that UM and UIM actions involve aspects of tort law, in that the allocation of fault is a necessary prerequisite to coverage, our case law firmly establishes that the contractual nature of the claims is procedurally controlling.

"[A] 'suit to recover UIM coverage is a direct action' against the UIM carrier and 'the [UIM] carrier alone is the real party in interest ....' " *Philadelphia Indemnity Insurance Co. v. Morris*, 990 S.W.2d 621, 625 (Ky.1999) (*quoting Coots v. Allstate Insurance Co.*, 853 S.W.2d 895, 903 (Ky. 1993)). While a UIM insurer's liability to its insured is fault-based to the extent the claimant has any comparative fault, there is no requirement that any other tortfeasor be named and/or served as a party in the action. In fact, Kentucky courts have refused to enforce insurance policy provisions requiring an insured to obtain a judgment or even sue the uninsured/underinsured motorist in order to determine liability under the contract. *Puckett v. Liberty Mutual Insurance Co.*, 477 S.W.2d 811 (Ky.1971). As this Court has stated with regard to UM coverage, it is first party contractual insurance that "must be honored even if the tort-feasor cannot be identified." *Gordon v. Kentucky Farm Bureau Insurance Co.*, 914 S.W.2d 331, 332 (Ky.1995). This distinction is further illustrated by the fact that the fifteen-year statute of limitations governs the bringing of these contractual actions rather than the tort statute of limitations set out in the Motor Vehicle Reparations Act, KRS 304.39–230(6). *Id.*

Appellees' action against KFB was based in contract, seeking UIM coverage for damages that exceeded the payments by Ashby's liability carrier. This is not a tort case against Ashby because Appellees have previously released him in exchange for his insurer's payment of policy limits. To the extent that Appellees could prove damages caused by Ashby which exceeded the policy limits paid by his insurer, they would be entitled to recover such additional damages under the UIM contract with KFB. But any payment by KFB would necessarily be made in performance of its contractual obligation to the Kruers, and neither would nor could be characterized as payment of legal damages pursuant to tort liability. *Morris, supra. See also State Farm Mutual Insurance Co. v. Fireman's Fund American Insurance Co.*, 550 S.W.2d 554, 557 (Ky.1977). ("[P]ayment made in performance of a contractual obligation is not a payment of 'damages.' ")

In *United States Fidelity and Guaranty Co. v. Preston*, 26 S.W.3d 145 (Ky.2000), a Kentucky resident was killed in an automobile accident in Georgia involving an uninsured motorist. The estate brought suit against the uninsured motorist and a Georgia jury found the Kentucky decedent to be sixty percent at fault. Under Georgia's modified comparative fault scheme, the estate was barred from recovery and the trial court entered a defense verdict. Nonetheless, the estate was subsequently permitted to bring an action in Kentucky against the decedent's insurer for UM coverage and to prove damages, ultimately recovering the forty percent of those damages attributable to the Georgia tortfeasor under the UM portion of the decedent's insurance contract. A majority of this Court distinguished the Georgia tort action from the Kentucky contract action, holding that the Georgia judgment in favor of the uninsured motorist would not be offended by the estate's recovery of benefits under

the unrelated UM insurance contract. USF & G's liability was based upon its independent contract with the decedent which could be enforced regardless of the presence of the tortfeasor in the lawsuit. *Id.* at 149. *See also Nationwide Mutual Insurance Co. v. Hatfield,* 122 S.W.3d 36 (Ky.2003).

As a condition precedent to establishing any contractual liability on behalf of KFB, Appellees had the burden of proving damages caused by Ashby that exceeded payments they had already received from Ashby's liability carrier. Within that context, we agree with the Court of Appeals that the UIM claim sounded in tort. Notwithstanding, KFB's liability was purely contractual. And because the action was based in contract, it simply did not fall within the purview of KRS 411.182.

In focusing on KRS 411.182, the Court of Appeals ignored the basic concepts of Kentucky's comparative fault approach. In *Hilen v. Hays,* 673 S.W.2d 713 (Ky. 1984), this Court first judicially adopted pure comparative fault in place of contributory negligence, stating that "allocating liability proportionate to fault remains 'irresistible to reason and all intelligent notions of fairness.'" *Id.* at 718. We explained:

> Comparative negligence is not "no-fault," but the direct opposite. It calls for liability for any particular injury in direct proportion to fault. It eliminates a windfall for either claimant or defendant as presently exists in our all-or-nothing situation where sometimes claims are barred by contributory negligence and sometimes claims are paid in full regardless of contributory negligence . . . .

*Id.* (Citations omitted).

Shortly after *Hilen,* we addressed the issue of comparative fault among multiple tortfeasors in *Prudential Life Insurance Co. v. Moody,* 696 S.W.2d 503 (Ky.1985), wherein Justice Vance noted in his concurring opinion:

> [W]e held [in *Hilen*] that a plaintiff who is only partially at fault cannot fairly be required to bear the entire loss. It would seem to follow, therefore, that a defendant who is only partially at fault in causing an injury should not be required to bear the entire loss but should, likewise, be chargeable only to the extent of his fault.

*Id.* at 505. *See also Dix & Associates Pipeline Contractors, Inc. v. Key,* 799 S.W.2d 24, 27 (Ky.1990). ("Whereas it is fundamentally unfair for a plaintiff who is only 5 percent at fault to be absolutely barred from recovery from a defendant who is 95 percent at fault, it is equally and fundamentally unfair to require one joint tort-feasor who is only 5 percent at fault to bear the entire loss when another tortfeasor has caused 95 percent of the loss.")

In 1988, Kentucky codified certain procedural aspects of our comparative fault system with the passage of KRS 411.182, thus representing the legislature's intent to eliminate, once and for all, joint and several liability and to protect plaintiffs and defendants alike from being penalized for the fault of another. KFB aptly points out that the adoption of comparative fault and its codification in KRS 411.182 were designed to prevent the result reached by the Court of Appeals herein, *i.e.,* a plaintiff being able to allocate fault against a tortfeasor far in excess of that tortfeasor's actual liability.

■ KRS 411.182 did not supplant our body of Kentucky law of comparative fault. Rather, it "is simply a codification of this common law evolution of the procedure for determining the respective liabilities of joint tortfeasors," whether joined in the original complaint or by third-party com-

plaint. *Degener v. Hall Contracting Corp.,* 27 S.W.3d 775, 779 (Ky.2000). *See also Dix, supra.* Emphasizing the underlying foundation of the equitable policies of comparative fault, we recently reiterated that "[t]he core principle of comparative negligence is that '[o]ne is liable for an amount equal to his degree of fault, no more and no less.'" *Regenstreif v. Phelps,* 142 S.W.3d 1, 6 (Ky.2004) (*quoting Stratton v. Parker,* 793 S.W.2d 817, 820 (Ky.1990).

■ At oral argument, Appellees' counsel argued that had the jury placed one hundred percent of the fault with the unknown motorcyclist, then KFB would not have been obligated to pay any UIM coverage. However, since the jury found that Ashby was fifty percent at fault, then one hundred percent of the fault should be allocated to him, and KFB should be required to pay all damages in excess of that paid by Ashby's liability carrier. In response to a question from the bench, counsel stated that such a result should occur even if the jury had found Ashby only five percent at fault and the motorcyclist ninety-five percent at fault. Essentially, Appellees' position is that if the known tortfeasor is found at all at fault, then the entire burden must be allocated to him. We find such a result illogical, unfair, and contrary to the purpose of comparative fault principles.

■ KFB's contractual liability to Appellees is defined and determined by the extent to which Ashby was found to be an underinsured motorist. Part of the equation in fixing that liability involves establishing Appellees' damages, which necessarily requires a determination of Ashby's percentage of liability or fault. In other words, Appellees are only entitled to recover such damages from KFB that they would have been entitled to recover from Ashby but for the fact he had insufficient liability coverage. Thus, fundamental fairness requires that KFB be permitted to introduce evidence pertaining to the alleged fault of a third-party tortfeasor.[2] By reversing the trial court's decision to permit apportionment against the unknown motorcyclist, the Court of Appeals essentially resurrected the concept of joint and several liability.

Kentucky CR 4.15 permits an action against an unknown defendant. Furthermore, upon compliance with the service of process procedures set forth in CR 4.05, 4.06, 4.07, the action may proceed accordingly. *See Schwindel v. Meade County,* 113 S.W.3d 159 (Ky.2003). KFB complied with the procedural requirements to bring the unknown motorcyclist into the lawsuit as a third-party defendant. While not currently known, the motorcyclist can nonetheless be apportioned fault for the purposes of determining Ashby's percentage of fault and KFB's resulting contractual liability.

Finally, we find the Court of Appeals' "empty chair" concerns to be without merit. In this case, there was more than sufficient evidence presented from several witnesses as to the motorcyclist's culpability in causing the accident. Despite Appellees' protestations to the contrary, this is not a situation where an insurance company has created a "phantom" party for the purpose of shifting liability. Nor does apportionment of fault to a tortfeasor who is not an "active" party to the action impose any liability upon him or warrant a judgment against him; it merely determines the percentage of total damages for which

---

**2.** Of course, as this Court has established, apportionment would not be appropriate against a third-party immune from liability as a matter of law, *Lexington–Fayette Urban County Government v. Smolcic,* 142 S.W.3d 128 (2004), or a party who has been dismissed on the *merits* of the claim.

he was responsible. *Floyd v. Carlisle Construction Co., Inc.,* 758 S.W.2d 430 (Ky.1988).

■ The thrust of the comparative negligence doctrine is to accomplish (1) the apportionment of fault between or among negligent parties whose negligence proximately causes any part of a loss or injury, and (2) the apportionment of the total damages resulting from such loss or injury in proportion to the fault of each party. To reach those purposes of the doctrine, we have great faith in the ability of our juries to determine whether an unknown tortfeasor was a legitimate cause of an injury or merely a fraudulent apparition to shift fault. Furthermore, apportionment of fault may not even be considered by the jury unless and until the trial court makes a threshold assessment that reasonable jurors could, in fact, determine that an individual was a fault. *Owens Corning Fiberglas Corp. v. Parrish,* 58 S.W.3d 467, 471 (Ky.2001).

■ Here, KFB properly joined the motorcyclist as a party to the action and presented sufficient evidence to justify an apportionment instruction. We conclude that the trial court properly instructed the jury to consider the liability of the motorcyclist in apportioning fault, and the jury concluded that he was fifty percent responsible for the accident.[3] As such, KFB's liability to Appellees under the UIM contract was limited to fifty percent of the excess damages over and above Ashby's policy limits.

For the foregoing reasons, the decision of the Court of Appeals is reversed and the judgment of the Shelby Circuit Court is reinstated.

COOPER, GRAVES, ROACH, and WINTERSHEIMER, JJ., concur.

SCOTT, J., dissents by separate opinion, with LAMBERT, C.J., joining that dissent.

Dissenting Opinion by Justice SCOTT.

Respectfully, I dissent.

The majority opinion concedes that apportionment would not be appropriate against a third-party immune from liability as a matter of law, citing *Lexington–Fayette Urban County Government v. Smolcic,* 142 S.W.3d 128 (Ky.2004). Yet, they would allow apportionment to an unknown tortfeasor who is neither before the court, nor subject to personal liability, such as the unknown motorcyclist in this case.

In *Smolcic* and *Jefferson County Commonwealth Attorney's Office v. Kaplan,* 65 S.W.3d 916 (Ky.2001), this Court held that fault could not be apportioned to persons or entities that enjoyed absolute or sovereign immunity because they failed to qualify as substantive "parties to the action" and therefore were not within the scope of KRS 411.182, Kentucky's apportionment statute. Following this same line of reasoning, a non-party, non-settling entity, not before the court, and not subject to personal liability, should not be considered for apportionment purposes because such a person is not a "party to the action" as required by KRS 411.182. There is simply no consistent logic between *Smolcic* and the majority's opinion in this case.

Of course, the majority doesn't even think KRS 411.182 applies in this case. They conclude the statute only applies in tort actions and feel this case is purely contractual. They cite *Philadelphia Indemnity Insurance Co. v. Morris,* 990

---

3. Although the trial court erred in relying on KRS 411.182 for apportionment, it reached the correct result and can still be affirmed.

*Haddad v. Louisville Gas & Electric Co.,* 449 S.W.2d 916 (Ky.1970).

S.W.2d 621, 625 (Ky.1999)[1], for the well-settled principle that "a 'suit to recover UIM coverage is a direct action' against the UIM carrier and 'the [UIM] carrier alone is the real party in interest...'" However, it does not follow from that premise that KRS 411.182 is irrelevant to adjudication of KFB's contractual obligations. Under the terms of the contract, KFB's liability is measured by the uninsured driver's fault as determined under tort law. *See Hoffman v. Yellow Cab Co. of Louisville*, 57 S.W.3d 257, 259 (Ky.2001). However, if the procedural requirements of KRS 411.182 are not applicable to contract claims, then neither can the comparative negligence principles of *Hilen v. Hays*, 673 S.W.2d 713 (Ky.1984) be used to obtain the same result (*Hilen* only applies to ordinary negligence cases—not contract issues). How then can the majority claim any right to apportionment in a contract case?

I believe KRS 411.182 does apply in this case, and this Court has repeatedly recognized that apportionment is strictly limited to those who fall within the scope of the statute. *Kaplan, supra; Owens Corning Fiberglas Corp. v. Parrish*, 58 S.W.3d 467 (Ky.2001). As such, it is important to look to the terms of the statute in order to determine to whom it applies. KRS 411.182 does not expressly define the term "party." But upon review of the statute, it becomes clear that "party" means anyone who actively assert claims, offensively or defensively, as parties before the court or who have settled by release or agreement.

In this case, the Kruers' estate sued KFB for UIM coverage provided under their policy. KFB then filed a third party complaint against the unknown motorcyclist, who was constructively served via warning order attorney. The Kruers countered with a claim against KFB on its UM coverage, but were denied their claim on grounds there was no contact by the motorcyclist with the Kruers' vehicle. *See Burton v. Farm Bureau Ins. Co.*, 116 S.W.3d 475, 478 (Ky.2003)("the purpose of the physical contact rule is to protect [ ] the insurer from fraudulent claims"). Yet, here, the majority refuses to apply its own *Burton* "no contact" logic in the apportionment of fault to an "unknown defendant", who was only constructively served by a warning order attorney, and thus, was unavailable as a real party in the case.

Civil Rule 4.05 allows "individuals whose name or place of residence is unknown" to be constructively served via warning order. However, CR 4.05 should be read in conjunction with KRS 454.165, which provides that a court cannot achieve *in personam* jurisdiction over persons who are the subject of constructive service of process.

Proceedings are divided into three classes, viz.: (1) *in personam*, (2) *in rem*, and (3) *quasi in rem*.

A judgment in a proceeding *in rem* is an adjudication upon the status of some particular thing by a tribunal having jurisdiction of the subject matter; it differs from a judgment in a proceeding *in personam*, in that the latter is an adjudication of the rights of the parties to the action, and does not directly affect the status of a thing or res. A personal judgment is a pronouncement binding only on the parties to the action and their privies; a judgment *in rem*, by a court of competent jurisdiction, is a pronouncement upon the status of the subject matter, and is binding upon the world. Judgments *in rem* and *quasi in rem* may be pronounced in an action in which the defendant has been notified by constructive process; whereas, a personal judgment may be pronounced only

1. (quoting *Coots v. Allstate Insurance Company*, 853 S.W.2d 895, 903 (Ky.1993)).

by personal service upon the defendant within the territorial jurisdiction of the court, or by his voluntary appearance to the action.

*Gayle v. Gayle*, 301 Ky. 613, 192 S.W.2d 821, 822 (1946)(internal citations omitted).

As the Kruers' action against KFB for UIM benefits is an *in personam* action, the unknown motorist cannot be constructively served and become a "party to the action."

In effect, the majority opinion lowers the standard of service necessary for apportionment. Instead of requiring personal jurisdiction, the majority would now allow apportionment to any unknown, nominal party, constructively served. They argue "fundamental fairness" requires that KFB be permitted to introduce evidence pertaining to the alleged fault of a third-party tortfeasor (who never touched anybody), even though the deceased plaintiffs are not to be accorded the same "fundamental fairness" on their UM coverage from KFB per *Burton*.

Even so, we are not dealing with a true "third-party" in this case. A constructively served "unknown" defendant is not considered to be before the court in an *in personam* action such as this. *c.f., Nolph v. Scott*, 725 S.W.2d 860, 861–862 (Ky.1987) ("Appointment of a warning order attorney is a procedural device permitting an action to proceed in certain circumstances, unknown to the defendant."). Even Justice Liebson in his dissent in *Nolph* acknowledged: "This lawsuit is an action *in personam* and not *in rem*, and constructive service does not, per se, make Mr. Nolph a party defendant." *Nolph* at 862 (emphasis added). Therefore, the unknown motorcyclist is not a "third-party" or any "party to the action." Fundamental fairness requires that apportionment not be allowed to such a non-party on the basis of constructive service of process alone.

He does not defend himself—and in many cases in the future, he will only be a "ghost"—created by the intellect of the otherwise liable party—defending himself against subrogation from the UIM carrier, both having the same interest—reducing the damages awarded. In this case the parties were killed, and thus, they cannot dispute the tortfeasor's proof as to who did what. Yet, for some unfathomable reason—we now have a "no personal jurisdiction" apportionment and a "no contact" rule for KFB—but not for their policyholders who paid their premiums on the earnest expectation they were buying coverage.

For the above stated reasons, I believe the unknown motorcyclist cannot be deemed a "party to the action" for purposes of apportionment. And because fault should not be apportioned against the "unknown motorcyclist", the issue of dismissal of the UM claim need not be addressed, other than to add, this Court has repeatedly upheld policy provisions requiring direct, physical contact with an uninsured vehicle as a prerequisite to UM coverage. That being said, the policyholders ought to have the benefit of the same rule. That would meet the need for consistency and avoid this absurd result.

LAMBERT, C.J., joins this dissent.