**Thomas Curtis LEWIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–85–0139–CR.

Court of Appeals of Texas, Houston (1st Dist.).

June 19, 1986.

Donald W. Rogers, Jr., Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., J. Harvey Hudson, Carol Davies, Harris County Asst. Dist. Attys., Houston, for appellee.

Before EVANS, C.J., and WARREN and JACK SMITH, JJ.

## OPINION

EVANS, Chief Justice.

A jury convicted the appellant of capital murder and assessed his punishment at confinement for life in the Texas Department of Corrections. We affirm.

Phuoc Nguyen, an employee at Nguyen's Seafood Store in Houston, testified that two men came into the store about 1:00 p.m. on August 28, 1984. The two men, Reginald Perryman and Donnie Murphy, later identified as appellant's accomplices, approached the witness and engaged him in conversation concerning seafood. Another man, later identified as the appellant, then entered the store and walked toward the counter where another employee, Kathy Co, wife of the storeowner, was sitting behind a cash register. At that point, the witness was thrown to the floor by Perryman and Murphy, and while lying there, he heard the sound of gun fire coming from "in front of the cashier." He testified that he lay on the floor until the three men left the market, and then saw that the cashier, Ms. Co, had slipped from her chair onto her knees and was slumped forward against the counter. The witness said that he and Mrs. Co's brother, Kenny Co, both examined Ms. Co and observed blood coming from her mouth.

Nguyen testified that he subsequently identified the appellant at a police line-up as the largest of the three men participating in the robbery, and the one who had the gun during the robbery. On cross-examination, the witness admitted that at the scene of the robbery, he told the police he could not recognize any of the men and that when he later saw a photo spread, he had failed to pick out the appellant's photograph. He explained that he was afraid and "in crisis" when he was first interviewed. But on redirect examination, he stated that he was sure the appellant was the individual who pointed the gun at him.

The State next called Kenny Co, who testified that the deceased was his sister. He said that when he entered the store, he saw two black men walking around the cash register, and that a third person pushed him from behind. He saw his sister kneeling down against the counter as he was pushed against the wall. One of the three men pointed a gun at him and told him to "place his hands" and bend down. He noticed a man behind the counter with a big white sack. He said the man who had pushed him into the store dropped his gun, then picked it up and pushed him into a bathroom. Two to three minutes later, he was told that his sister had been shot and that the police and an ambulance had been called. He testified that the appellant "looked like" the man who had the gun during the robbery.

The appellant's co-defendant, Reginald Perryman, testified for the State. He stated that he had entered into a plea bargain agreement, under which he was to be sentenced to 20 years in prison "if he testified truthfully." He said that the State had also agreed to write a letter to the prison warden to insure that appellant and Perryman were not placed in the same prison unit.

According to Perryman's testimony, the appellant came to his residence on the day in question, and after purchasing some beer, they discussed robbing the Nguyen Seafood Store. While returning from purchasing the beer, Perryman and the appellant encountered Murphy, who agreed to participate in the robbery. The three men then went to Perryman's house where they obtained a pillowcase to put the money in, and socks to put over their hands so as to avoid leaving fingerprints. The appellant carried a small, silver, .25 caliber automatic pistol during the robbery. The witness and Murphy entered the store first, and the appellant entered a few minutes later. Perryman testified that when appellant entered the market, Murphy grabbed the clerk and threw him to the floor where he stayed face down throughout the robbery. Perryman then heard shots coming from the front of the store, and he asked the appellant if he had shot the woman. The appellant replied that he had done so. After taking the money from the cash register, the three men left the scene in an

automobile driven by the appellant. They drove to Perryman's house and split the money, which amounted to $32.00 each. Perryman testified that after the robbery, he told his common-law wife, Nita Jo Williams, that he was in serious trouble and related to her what he had done. The next day, he discussed the incident with his aunt and thereafter surrendered himself to the police.

Nita Jo Williams, Perryman's common-law wife, testified that on the afternoon of the robbery, she was with Perryman, the appellant, and one other man, and all three were acting somewhat nervous. She said that they drove to a beer house which was close to the fish market, and upon passing the market, she noticed the police and an ambulance at the fish market. She testified that after the appellant went into the beer house, Perryman related to her what had happened and that appellant had shot the woman. She said that later in the week, she went with Perryman to the appellant's residence, where Perryman told appellant that he wanted to sell the gun that was taken from Kathy Co during the robbery. Ms. Williams said that appellant showed them several newspaper articles about the robbery at that time, stated that there was a reward for their arrest in the newspaper because of the fish market murder, and stated that he was not going to give Perryman the gun because he was afraid the police could trace it. She testified that the appellant stated he would kill anyone who turned him in for the reward money.

In his first ground of error, the appellant contends that the trial court committed reversible error in admitting the hearsay testimony of Nita Jo Williams, i.e., that the accomplice witness, Perryman, told her that the appellant shot the woman during the robbery.

The record reflects that on direct examination, the witness, Ms. Williams, was asked what happened when she and the three men arrived at the beer house. She testified that the appellant went in to get some beer, and that Perryman "started tell-ing me" that appellant shot the woman. After several more questions and answers concerning these events, appellant's counsel objected to the testimony on the basis of hearsay, which the trial court sustained and instructed the jury not to consider. The court denied appellant's motion for a mistrial, commenting that appellant's objection had not been made as soon as possible; but the court further explained that the jury would be instructed not to consider the testimony for any purpose. The witness proceeded to testify, without objection, that appellant told Perryman to try to be "cool and don't be nervous," and that she and Perryman had gone over to the appellant's house because Perryman wanted to sell the guns that the appellant had. The witness then testified that while "she did not really know," she thought that the guns were used in the robbery. At this point, the trial court sustained appellant's objection and instructed the jury to disregard the witness' response. The witness was then allowed to testify, without objection, that she had heard the appellant say that he was not going to "give us the guns" because that would be the first thing the police would trace, and also, that he (appellant) would kill anybody who turned him in for the reward money. She further testified that the appellant did not want to give up the guns because he did not want the guns to get "tracked down." On cross-examination, appellant's counsel interrogated Ms. Williams concerning what Perryman had told her about having stolen the guns from the store. On redirect examination, the witness was asked:

Q. "Nita Jo, Mr. Baird (appellant's counsel) asked you what Reggie (Perryman) told you about who took the gun from the store. Who did Reggie tell you actually. killed the woman?

A. "Cookie" (the appellant).

The appellant objected to this question and answer as hearsay, which objection the trial court sustained. The court also instructed the jury to disregard the answer and not consider it for any purpose. But the court denied appellant's request for a

mistrial, and that is the basis for his complaint on this appeal.

■ Inasmuch as the trial court sustained the appellant's objection, and instructed the jury to disregard the testimony, the trial court obviously considered the evidence as inadmissible hearsay. Assuming this to be so, the only question is whether the court's instruction was sufficient to cure any error in the asking of an improper question. Viewing the record in its entirety, we conclude that the minds of the average jury would not have found the State's case significantly less persuasive in the absence of the improper testimony. We therefore overrule the ground of error. *Schneble v. Florida*, 405 U.S. 427, 432, 92 S.Ct. 1056, 1059–60, 31 L.Ed.2d 340 (1972); *Davis v. State*, 645 S.W.2d 817, 818 (Tex. Crim.App.1983).

In his second ground of error, the appellant contends that the evidence is insufficient to support the conviction. Under this ground, he argues that in the absence of the testimony of the accomplice witness, Perryman, the State proved only that appellant is guilty of aggravated robbery, not capital murder.

Tex.Code Crim.P.Ann. art. 38.14 (Vernon 1979) provides that:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

■ The record contains ample evidence to corroborate Perryman's testimony. Phuoc Nguyen testified that during the robbery, he saw a third man, whom he later identified as appellant, pointing a gun in his direction. He stated that he heard the sounds of gunfire coming from the area of the store where the third man was standing with the gun. He said that he did not see either of the other two robbers carrying a weapon.

Appellant's second ground of error is overruled.

In his third ground of error, the appellant alleges that the State was improperly allowed to bolster Perryman's testimony, at a time when he had not been impeached by the appellant, by eliciting testimony concerning portions of Perryman's plea bargain agreement with the State which provided the consequences he would face if he did not testify truthfully.

The record indicates that in response to questioning by the State, Perryman testified that he had agreed to testify in exchange for the State making a recommendation as to what would happen in his case; that it was his understanding that if he testified "truthfully" about what he knew, he would receive a 20–year sentence for aggravated robbery; and that if he testified "truthfully," the State would write a letter to the prison warden to ensure that he and the appellant were not placed in the same penitentiary. The prosecutor then asked Perryman what the State told him would happen if he did not testify truthfully in appellant's case. The appellant's counsel objected to the question as constituting improper bolstering, but the objection was overruled. In response to the question, Perryman stated that if he failed to testify truthfully, the State would seek the maximum penalty of life in prison and that he would also be prosecuted for perjury.

■ Our review of the record does not lead us to conclude that improper bolstering occurred. In its direct examination of the witness, the State proved, without objection, that the consideration for its part of the plea bargain agreement was the witness' commitment to testify "truthfully" at appellant's trial. The appellant did not object to the plea bargain agreement being made known to the jury, and indeed, it was to appellant's benefit that the jury be made aware that a plea bargain agreement had been entered into in order to obtain Perryman's testimony. Although the witness' testimony regarding the State's warning to him might, if considered alone, be considered improper bolstering, it was not objectionable when considered in

the light of the preceding examination. Indeed, it only served to explain the State's position with respect to the plea-bargain agreement, the essentials of which had already been admitted without objection.

We overrule the third ground of error.

In his fourth ground of error, the appellant contends that the trial court committed reversible error by allowing the jury to convict under the law of parties, when there was no evidence to show appellant was criminally responsible for the conduct of another who committed the offense of capital murder.

Here, the appellant makes essentially the same argument concerning the sufficiency of the evidence that he made with respect to his second ground of error. He argues that aside from Perryman's testimony, there is no evidence to show that he is criminally responsible for the offense of capital murder.

■ We find that the evidence was sufficient to support the appellant's conviction as a principal, and we therefore hold that any error resulting from the submission of an improper charge on parties constitutes harmless error. *Govan v. State*, 682 S.W.2d 567 (Tex.Crim.App.1985); *Todd v. State*, 601 S.W.2d 718 (Tex.Crim.App.1980).

The fourth ground of error is overruled.

The judgment of the trial court is affirmed.