65 S.W.3d 916 (2001)
JEFFERSON COUNTY COMMONWEALTH ATTORNEY'S OFFICE, Anne Leitsch Haynie, and Thomas W. Dyke, Appellants,
v.
David KAPLAN, Kenneth Rider, and Gary Wayne Puckett, Appellees. and
David Kaplan, Appellant,
v.
Jefferson Commonwealth County Attorney's Office, Anne Leitsch Haynie, Thomas W. Dyke, Kenneth Rider, and Gary Wade Puckett, Appellees.
No. 1999-SC-0982-DG, 1999-SC-1001-DG.
Supreme Court of Kentucky.
November 21, 2001.
As Modified on Denial of Rehearing February 21, 2002.
*918 A.B. Chandler, III, Attorney General, Stuart W. Cobb, Assistant Attorney General, Civil & Environmental Law Division, Office of the Attorney General, Frankfort, Counsel for Jefferson County Commonwealth Attorney's Office, Anne Leitsch Haynie, and Thomas W. Dyke.
George R. Carter, Louisville, Counsel for David Kaplan.
James M. Herrick, Kentucky State Police Legal Office, Frankfort, Counsel for Kenneth Rider.
Donald M. Heavrin, Louisville, Counsel for Gary Wayne Puckett.
*917 JOHNSTONE, Justice.
Gary Wade Puckett sued David Kaplan for legal malpractice in connection with Kaplan's representation of Puckett in a criminal case. Kaplan joined two prosecutors and a Kentucky State Police chemist as third-party defendants. The trial court found that the third-party defendants were immune from suit and that Kaplan was not entitled to indemnity, contribution, or apportionment from the third-party defendants. For these two reasons, the trial court dismissed Kaplan's third-party complaint. The Court of Appeals affirmed the trial court's ruling as to the prosecutors *919 and affirmed as to the chemist on different grounds. Further, the Court of Appeals indicated, but did not specifically hold, that fault could be apportioned against the prosecutors and the chemist. We affirm in part, and reverse in part.
In June 1994, Gary Puckett was tried for wanton murder and arson. Kaplan represented Puckett at trial. Anne Haynie and Thomas Dyke represented the Commonwealth. The prosecution relied heavily on the fact that expert testimony revealed the presence of accelerants on debris taken from the fire and from the clothes worn by Puckett near the time the fire started. But in fact, there was no identity among the accelerants. The chemical composition of the accelerants found on remnants from the fire was different from the chemical composition of the accelerant found on Puckett's clothes.
The lack of identity in the accelerants was not revealed in the report prepared by Kenneth Rider, the KSP chemist who testified for the Commonwealth. But Rider's notes regarding his analysis and the gas chromatograms did reveal the discrepancy. The Commonwealth disclosed the report, but did not include Rider's notes or the gas chromatography results. Kaplan neither specifically requested these during discovery nor retained an expert to review the report's results and conclusions.
Puckett was convicted of all charges and sentenced to life imprisonment on the murder conviction and twenty-five years on the arson conviction. On his matter-of-right appeal, this Court affirmed both his conviction and sentence. After his judgment was affirmed on appeal, Puckett and the Commonwealth Attorney's Office made a joint motion to vacate the judgment and grant a new trial. The motion was based on the Commonwealth's acknowledged failure to appreciate the exculpatory nature of the lack of identity of the accelerants found on the fire debris and those found on Puckett's clothes. The trial court granted the motion. In September 1996, Puckett was acquitted of all charges against him at retrial.
After his acquittal, Puckett filed a legal malpractice action against Kaplan. In the complaint, Puckett alleged that Kaplan's ineffective assistance of counsel caused his wrongful conviction. Puckett claimed, in part, that Kaplan was negligent in failing to discover lack of identity among the accelerant evidence and in failing to have the chemist's report subjected to independent expert analysis. In turn, Kaplan joined Haynie, Dyke, and Rider as third-party defendants.
The third-party defendants moved to dismiss the complaint against them. The trial court found that Haynie and Dyke were immune from suit and found that Kaplan's third-party complaint failed to state a claim upon which relief could be granted. On these grounds, the trial court granted the motion to dismiss. The Court of Appeals held that Haynie, Dyke, and Rider were absolutely immune from suit and affirmed the trial court's summary judgment in their favor. Finally, the Court of Appeals indicated, but did not specifically hold, that fault could be apportioned against Haynie, Dyke, and Rider.
On appeal, Kaplan argues that Haynie and Dyke are entitled to only qualified immunity and that a material issue of fact exists as to whether they are entitled to immunity in this case. Further, he argues that there are genuine issues of material fact as to Rider's negligence and whether he is entitled to immunity. Finally, he argues that regardless of the immunity questions, he is entitled to apportion fault against all three under KRS 411.182.

*920 PROSECUTORS' IMMUNITY

In the amended third-party complaint, Kaplan alleges that Haynie and Dyke failed to disclose exculpatory evidence as required by the trial court's pre-trial order, which failure compromised Kaplan's ability to effectively represent Puckett at his first trial. These allegations occurred beyond the investigation phase of the case. Rather, the alleged failure to disclose evidence occurred at a point in time when the prosecutors were acting as advocates. Thus, we hold that the prosecutors are entitled to absolute immunity. See Buckley v. Fitzsimmons, 509 U.S. 259, 273-74, 113 S.Ct. 2606, 2616, 125 L.Ed.2d 209, 226 (1993).
Our holding reflects the policy decision made by this Court in McCollum v. Garrett, Ky., 880 S.W.2d 530 (1994), in which we drew a distinction between a prosecutor's role as investigator and his or her role as an advocate for the Commonwealth:
During the time in which [the prosecutor] essentially acted as an investigator, the protection available to him was qualified immunity. Upon the commencement of prosecution and the assumption of his role of prosecutor, [the prosecutor's] immunity became absolute.
Id. at 535.
In a case involving facts similar to those in the case at bar, the U.S. Supreme Court articulated why it made the same policy choice as we made in McCollum and reaffirm today:
[S]uits that survived the pleadings would pose substantial danger of liability even to the honest prosecutor. The prosecutor's possible knowledge of a witness' falsehoods, the materiality of evidence not revealed to the defense, the propriety of a closing argument, andultimately in every casethe likelihood that prosecutorial misconduct so infected a trial as to deny due process, are typical of issues with which judges struggle in actions for post-trial relief, sometimes to differing conclusions. The presentation of such issues in a § 1983 [civil] action often would require a virtual retrial of the criminal offense in a new forum .... It is fair to say, we think, that the honest prosecutor would face greater difficulty in meeting the standards of qualified immunity than other executive or administrative officials. Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.
Imbler v. Pachtman, 424 U.S. 409, 425-26, 96 S.Ct. 984, 992-93, 47 L.Ed.2d 128, 140-41 (1976) (emphasis added).

RIDER
The amended third-party complaint alleges that Rider failed to disclose the results of his tests to the defense. On appeal, Kaplan argues that Rider had a constitutional duty under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose to the defense the exculpatory portions of analysis and tests. Brady clearly imposes a duty upon the prosecutor to disclose exculpatory material:
We ... hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process *921 where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.
Id. at 87, 83 S.Ct. at 1196, 10 L.Ed.2d at 218.
Kaplan points to no authority that imposes the same obligation on a witness for the Commonwealth or an agent working on the Commonwealth's behalf. Moreover, RCr 7.24 places the obligation to disclose evidence solely upon the attorney for the Commonwealth. We can see no sound reason to place an independent duty on witnesses for, and agents of, the Commonwealth to disclose exculpatory evidence directly to a criminal defendant. And Kaplan advances none. Thus, we hold that Rider had no duty to disclose the results of his report directly to Puckett or his counsel.
This leaves Rider's testimony as the only possible remaining source of his liability. But the law of the Commonwealth is that a witness testifying in a judicial proceeding has absolute immunity from liability if his or her testimony has some relation to the proceeding. See Lawson v. Hensley, Ky.App., 712 S.W.2d 369, 370 (1986). As Rider's testimony related directly to the proceeding, he is absolutely immune from liability.

DISMISSAL OF THIRD-PARTY COMPLAINT
CR 14.01 provides in pertinent part that a "defendant may move for leave as a third-party plaintiff to assert a claim against a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." (Emphasis added). Absolute immunity means "a complete exemption from civil liability ...." Black's Law Dictionary, 753 (7th ed.1999). Because Haynie, Dyke, and Rider had no legal liability to Kaplan as third-party plaintiff, we hold that the trial court correctly dismissed Kaplan's third-party complaint against them.

APPORTIONMENT
Finally, Kaplan argues that even if Haynie, Dyke, and Rider are immune from liability, they still should be subject to apportionment of fault under KRS 411.182, which provides in pertinent part:
(1) In all tort actions ... involving fault of more than one party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:
(a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
(b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.
....
(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the *922 obligation, determined in accordance with the provisions of this section.
In its opinion, the Court of Appeals stated its belief that fault could be apportioned against Haynie, Dyke, and Rider notwithstanding their absolute immunity from liability. The Court of Appeals reasoned that to do otherwise would penalize Kaplan for their immunity. The Court of Appeals approached this problem from the wrong direction. Whether fault can be apportioned against someone with absolute immunity from liability is determined by construing the statute. However, the Court of Appeals reached its conclusion based upon a policy decision. The Court of Appeals' conclusion is contrary to the plain language of the statute.
Haynie, Dyke, and Rider are not third-party defendants as listed in KRS 411.182(1). Nor are they settling tort-feasors under section (4). A number of Court of Appeals' decisions limit the right to apportionment under KRS 411.182 to parties and other persons who fall within the scope of the statute. "When the statute states that the trier-of-fact shall consider the conduct of `each party at fault,' such phrase means those parties complying with the statute as named parties to the litigation and those who have settled prior to litigation, not the world at large." Baker v. Webb, Ky.App., 883 S.W.2d 898, 900 (1994); see also Copass v. Monroe County Medical Foundation, Ky., 900 S.W.2d 617, 619-20 (1995); Bass v. Williams, Ky.App., 839 S.W.2d 559, 563-64 (1992). We agree with this line of cases and hold that fault cannot be apportioned against Haynie, Dyke, and Rider because they do not fall within the scope of those to whom fault can be apportioned against under KRS 411.182.
For the reasons set forth above, we affirm that part of the Court of Appeals' opinion that affirms the trial court's dismissal of Kaplan's third-party complaint. We reverse that part of the Court of Appeals' opinion that indicates that Kaplan can apportion fault against Haynie, Dyke, and Rider.
LAMBERT, C.J.; COOPER and WINTERSHEIMER, JJ., concur.
KELLER, J., concurs in part and dissents in part by separate opinion, with GRAVES and STUMBO, JJ., joining.
KELLER, Justice, concurring in part and dissenting in part.
I agree with the majority's conclusion that the trial court properly granted the motion to dismiss Kaplan's third-party complaint against the Assistant Commonwealth Attorneys. I write separately, however, because: (1) I believe the trial court erred when it dismissed Kaplan's third-party complaint against Rider, the Kentucky State Police (KSP) chemist who performed a forensic analysis of evidence collected from the crime scene, and (2) I agree with the Court of Appeals panel below that, under KRS 411.182, if the evidence so justifies, the trial court should apportion fault among each of the parties named in the third-party complaintincluding the Assistant Commonwealth Attorneys properly dismissed by the trial court.

RIDER
Although I agree with the majority that Rider enjoys immunity from liability for his testimony during the trial proceedings, I believe Kaplan's third-party complaint alleges a viable common law claim that Rider, either negligently or in bad faith, communicated his scientific findings in a *923 manner which obscured their exculpatory nature. Kaplan's Amended Third-Party Complaint reads:
COUNT I
1. The plaintiff has filed a cause of action against this defendant; a copy of the Complaint is attached hereto as Exhibit A.
2. The third-party defendant, Commonwealth Attorney of Jefferson County, is an official of the Commonwealth of Kentucky with the responsibility and duty to prosecute all violations of the criminal laws of this Commonwealth in Jefferson County.
3. The third-party defendants, Anne Leitsch Haynie and Thomas W. Dyke are employed by the Commonwealth's Attorney of Jefferson County and have the responsibility and duty to prosecute all violations of the criminal laws of this Commonwealth in Jefferson County.
4. The third-party defendant, Kenneth Rider, is an employee of the Kentucky State Police, Central Forensic Laboratory, Frankfort, Kentucky, a Department of the Justice Cabinet, with the responsibility of detecting and preventing crime; maintain law and order; collect, classify, and maintain information useful for the detection of crime; and the identification, apprehension, and conviction of criminals.
5. On October 20, 1993, there was a fire at the plaintiff's residence, and in this fire the plaintiff's mother died of smoke inhalation.
6. On November 12, 1993, the Commonwealth of Kentucky, through the Commonwealth Attorney's office for Jefferson County, indicted Gary Wade Puckett for Willful Murder of his mother and Arson I for the fire at his residence.
7. During the investigation of this fire, samples of fire debris and clothing taken from the deceased and from the plaintiff were sent to the Kentucky State Police Crime Lab for examination.
8. The examination of the samples referred to above were performed by Kenneth Rider pursuant to the authority given to him by the Kentucky State Police and within the scope of his employment with the Kentucky State Police.
9. On or about November 15, 1993, in the action styled Commonwealth of Kentucky v. Gary Wade Puckett, Case No. 93-CR-2492, Judge Daniel A. Schneider, Jefferson Circuit Court, Sixth Division, entered an order of arraignment and discovery, a copy of which is attached hereto as Exhibit B.
10. Before the trial of this matter conducted on June 20, 1994, the Commonwealth's Attorney for Jefferson County, Anne Leitsch Haynie, Thomas W. Dyke, and Kenneth Rider failed to disclose the results of scientific tests and to turn over exculpatory evidence as required by the order of the Jefferson Circuit Court.
11. The failure of Jefferson County's Commonwealth Attorney, Anne Leitsch Haynie, Thomas W. Dyke, and Kenneth Rider to disclose scientific tests and exculpatory *924 evidence prevented this defendant-third party plaintiff from effectively representing the plaintiff in the first trial of this matter.
12. As a result of the third-party defendants Jefferson County's Commonwealth Attorney, Anne Leitsch Haynie, Thomas W. Dyke, and Kenneth Rider failure to disclose scientific tests and exculpatory evidence, the defendant third-party plaintiff has suffered damages and was caused to incur attorney's fees and costs, and continues to incur attorney's fees and costs, for which the third-party defendants are liable.
COUNT II
1. The defendant third-party plaintiff adopts and incorporates paragraphs 1-10 of Count I.
2. The defendant third party plaintiff states that if the plaintiff Gary Wade Puckett was damaged as alleged in the Complaint, then the injury and damages suffered by the plaintiff were the direct and proximate result of a substantial factor resulting from the sole and/or primary and/or comparative negligence and fault of the third-party defendants, Commonwealth Attorney of Jefferson County, Anne Leitsch Haynie, Thomas W. Dyke, and Kenneth Rider, and this defendant-third party plaintiff is entitled to recover on its third-party complaint against the third party defendants, by way of indemnity and/or contribution and/or apportionment of any judgment recovered against him by the plaintiff in this action.
Wherefore, the defendant-third party plaintiff David Kaplan demands judgment against the third-party defendants Commonwealth Attorney of Jefferson County, Anne Leitsch Haynie, Thomas W. Dyke, and Kenneth Rider for damages, attorney fees and for indemnity and/or contribution and/or apportionment of any judgment recovered against him by the plaintiff in this action, plus court costs and all other relief to which the defendant third-party plaintiff appears entitled.
Both this Court and the Court of Appeals have erroneously interpreted Kaplan's third-party claim against Rider as a claim primarily concerned with Rider's in-court testimony at the first trial.[1] In my opinion, today's majority further mischaracterizes Kaplan's claim against Rider when it disposes of that claim by holding that Rider has no duty to turn over exculpatory evidence to the defense. Kaplan's third-party claim against Rider does not require application of the constitutional duty addressed in Brady v. Maryland,[2] but rather addresses itself to the cornerstone principle of Kentucky negligence law: "Every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury."[3] *925 Kaplan's Response to Rider's Motion to Dismiss clarifies that the third-party claim alleges that Rider breached this duty of reasonable care when he prepared a report which inadequately and incompletely reported his findings and failed to disclose that the accelerant materials he detected upon both debris from the destroyed structure and upon Gary Puckett's clothing[4] differed in chemical composition:
In this case, the claim against Mr. Rider is not that he performed a function in an attempt to compel others to comply with the law, nor it is about his selection of the testing procedure. Rather, it is about his analysis of specific evidence samples. In doing this analysis, Mr. Rider is required to perform his tasks in a reasonable and prudent manner. As a result, Mr. Rider is liable for any negligent or intentional misrepresentations that he would make as to the result of his analysis.
... [I]t was clearly foreseeable that any misrepresentation of his findings would affect Mr. Puckett's defense in the criminal case. In this particular circumstance, the harm was foreseeable to Mr. Rider, and the victim of the injury was identifiable....
The dispositive issue in this case, therefore, is not, as assumed by the majority, whether a non-prosecutor shares in the constitutional duty found in Brady v. Maryland, but rather whether common law negligence imposes a duty upon a person in Rider's position to accurately and completely report his scientific findings. This "question of duty presents an issue of law,"[5] which is inherently intertwined with policy determinations.[6] The primary considerations which guide such policy determinations are the risk and magnitude of foreseeable injuries resulting from acts or omissions:
[I]n the law of negligence generally, legal duty in respect to inaction or nonaction generally in man's relation to other *926 persons ... is proportioned to the magnitude of peril to be reasonably apprehended from an act or an omission. Foresight or reasonable anticipation is the standard of diligence, and precaution a duty where there is reason for apprehension.[7]
Although the question of whether a scientist employed by the Commonwealth can be liable under common law negligence is a question of first impression, I find a close parallel in cases from other jurisdictions which have addressed suits alleging negligent performance of testing brought by former-and-prospective-employee plaintiffs against drug testing laboratories.[8] Although many of these claims allege that avoidable laboratory error produced a false result, "the negligence most often alleged by employees and job applicants is laboratory failure to provide accurate information to the employer regarding some aspect of the test."[9] Courts have generally denied defense motions for summary judgment and have found that laboratories owe a duty of ordinary care in the handling and examination of employees' samples because it is foreseeable that an individual plaintiff could suffer serious injury from negligent testing procedurese.g., damage to their current or future employment prospects.[10]
*927 When the testing performed involves forensic evidence collected from a crime scene, the equities are even stronger in favor of a duty of due care because erroneous testing or reporting of test results can result in a criminal conviction and incarceration. In this case, the Request for Examination identified Puckett as the suspect of the criminal investigation, and I believe Rider's duty of reasonable care towards Puckett required Rider to accurately and completely report his findings. As Rider's performance of such a ministerial task does not implicate common law official immunity[11] and the evidence produced in discovery raises genuine issues of material fact as to whether Rider breached this duty, I believe the trial court erred when it entered summary judgment in favor of Rider as to Kaplan's third-party complaint.

APPORTIONMENT
KRS 411.184 requires trial courts to instruct juries to apportion fault among parties to the action and settling nonparties:
(1) In all tort actions, including products liability actions, involving fault of more than one party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, shall instruct the jury to answer interrogatories or, if there is no jury, shall make findings indicating:
(a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
(b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.
(2) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
(3) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under subsection (4) of this section, and shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.
(4) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other person liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons shall be reduced by the amount of the released persons' equitable share of the obligation, determined in accordance with the provisions of this section.[12]
Today's majority holds that the trial court should not apportion fault against the parties brought into this action through Kaplan's third-party complaint because "Haynie, Dyke, and Rider are not *928 third-party defendants as listed in KRS 411.182(1)"[13] because, by virtue of the trial court's dismissal of the third-party complaint against each, "they do not fall within the scope of those to whom fault can be apportioned against under KRS 411.182."[14] Of course, given my above resolution of the liability issues concerning Rider, I believe the trial court should allow the jury to apportion fault against Rider. However, with respect to the other two third-party defendants, Haynie and Dyke, I find the majority's conclusion at odds with prior case law which have given a broader construction to KRS 411.182, and I believe that, if the evidence at trial justifies an inference of liability on the part of either Haynie or Dyke, the trial court's jury instructions should require apportionment of fault against them. The majority's contrary holding narrowly interpreting the language of KRS 411.182 "violates the main purpose of comparative fault by improperly subjecting the defendants to liability in excess of their proportion of fault."[15]
The implicit premise behind the majority's holding is that, after the trial court entered summary judgment in favor of Haynie, Dyke, and Rider as to Kaplan's third-party complaint, each ceased to be a third-party defendant for the purposes of apportionment under KRS 411.182.[16] When interpreting KRS 454.040,[17] an older statutory provision permitting the apportionment of damages among "defendants," however, this Court rejected such a narrow construction and permitted apportionment against a defendant despite the fact that the plaintiff's claim against that defendant was barred by the statute of limitations:
The Court of Appeals reasoned that apportionment is permitted only against "defendants" ... and concluded since we held that Carney should have been dismissed on his plea of limitations, he could not have been considered a "defendant" in the literal sense for the purpose of the apportionment statute. We are of the opinion the Court of Appeals is in error in this respect. We do not give such a narrow reading to KRS 454.040.[18] *929 I believe today's majority similarly misinterprets the "third-party defendants" language in KRS 411.182(1).
Previous Kentucky appellate interpretations of KRS 411.182 have distinguished between potentially liable persons and entities that were never made party to the actionagainst whom apportionment is improperand those "before the court,"[19] "named parties to the litigation,"[20] and "tortfeasor[s] against whom a claim has been asserted"[21]against whom apportionment is required.
Before today, this Court has never interpreted KRS 411.182 to require that a valid claim remain in litigation against a third-party defendant to require apportionment against that third-party defendant. In fact, we have implied exactly the opposite and suggested that third-party complaint practice allows apportionment even after a third-party complaint is dismissed:
Under the apportionment rules set out above, third-party defendants may often be entitled to dismissal on the grounds that they cannot be liable to the third-party plaintiff. This does not mean that defendants should not assert these third-party claims; for if there is never an "active assertion of a claim" against the third party, liability cannot be apportioned to him. As a consequence, the defendant might incur liability for damages caused by that third party.[22]
In Floyd v. Carlisle Construction Co. Inc.,[23] this Court reviewed its prior caselaw and recognized that the variables critical to the determination of whether apportionment is proper are: (1) whether a claim has been actively asserted against the potential joint tortfeasor; and (2) whether the evidence justifies an inference of liabilitynot whether there are claims against those persons which require further litigation:
The basis for these holdings is the active assertion of a claim against joint tortfeasors. If there is an active assertion of a claim against joint tortfeasors, and the evidence is sufficient to submit the issue of liability to each, an apportionment instruction is required whether or not each of the torfeasors is a party-defendant at the time of trial.[24]
Less than a year ago, this Court denied discretionary review to Charish v. Johnson.[25] *930 There, the Court of Appeals analyzed an allegation of error concerning the trial court's failure to require apportionment of fault against the University of Kentucky Medical Center (UKMC) after the trial court dismissed UKMC as a party defendant on sovereign immunity grounds. As directed to do by this Court in Kevin Tucker & Associates, Inc., the Court of Appeals resolved the apportionment issue by determining whether the evidence at trial justified an inference of liability on the part of the immune entity:
The physicians argue on direct appeal that despite the fact that UKMC was properly dismissed as a party to the action, the circuit court nevertheless erred when it did not instruct the jury that it could apportion fault to UKMC. Kentucky's apportionment statute requires that "[i]n all tort actions ... involving fault of more than one party to the action" the jury is to be instructed to determine the percentage of fault attributable to "each claimant, defendant, third-party defendant, and person who has been released [by an agreement] from liability...."
In Kevin Tucker & Associates, Inc. v. Scott & Ritter, Inc., we construed Kentucky Revised Statute (KRS) 411.182 and determined that "if the evidence at trial shows that [the third-party defendant] caused some portion of the [plaintiff's] damages, [the defendant] will be entitled to an apportionment instruction. [The third-party defendant] is entitled to be dismissed, however, because [it] cannot be liable to [the defendant] under any circumstances."
The evidence adduced at trial of this action did not show that UKMC was responsible for any injury to Wallace Johnson. While there was proof that UKMC was understaffed while Johnson was a patient, there was no attempt to connect the understaffing to the failure to properly treat Johnson. Thus, UKMC could only have been held liable vicariously as the result of the negligence of its only employee who was sued, nurse Owens; and she was absolved by the jury from any responsibility for Johnson's maltreatment.[26]
I believe this to be the proper analysis. Through his third-party complaint, Kaplan actively asserted a claim against the third-party defendants and brought them before the Court. Accordingly, I would hold that, upon remand, if the evidence allows a reasonable inference of liability on the part of any of the named third-party defendants, the trial court is required to submit jury instructions allowing apportionment of fault.
GRAVES and STUMBO, JJ., join this opinion, concurring in part and dissenting in part.
NOTES
[1] See Majority Opinion at 65 S.W.3d 916, 921 (2001) ("This leaves Rider's testimony as the only possible remaining source of his liability."); The Court of Appeals described the third-party claim as "more concerned with his trial testimony than with his testing, the written report, and the gas chromatograph readings."
[2] 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[3] Isaacs v. Smith, Ky., 5 S.W.3d 500, 502 (1999) (citing Grayson Fraternal Order of Eagles v. Claywell, Ky., 736 S.W.2d 328, 332 (1987)).
[4] The evidentiary record in this case includes a Kentucky State Police Crime Laboratory Request for Examination filed by a Detective with the Jefferson County Police Department which: (1) identified Gary W. Puckett by name as the suspect or accused; (2) listed twelve exhibits of physical evidence submitted with the examination request; and (3) which requested that the Kentucky State Police perform the following examination:

Examine exhibits # 1, # 2, # 3, # 4, # 5, # 6 [all described as "fire debris" from various parts of the house], # 7 ["Victim's nightgown"]; # 8 ["Suspect's pants with belt"], # 9 ["Suspect's tee shirt"], and # 10 ["Suspect's socks and underwear"] for presence of accelerants. If an accelerant is present, attempt to match to Exhibit # 11 ["Liquid sample from vehicle"]. Exhibit # 12 is a control sample to compare with Exhibit # 11.
The matter was assigned to Rider, and he reported his findings in a Report of Forensic Laboratory Examination:
Exhibits 1, 2, 3, 7, 8, 9, and 10 were each found to contain a medium petroleum distillate.*
There were no accelerants identified in Exhibits 4, 5, and 6. This does not exclude the possibility of an accelerant being consumed by the fire or evaporating.
Exhibits 11 and 12 were each found to contain a very heavy petroleum distillate which could have a common origin. However, very heavy petroleum distillates are not generally considered to be accelerants.
*EXAMPLES: Paint thinner, mineral spirits and charcoal lighter fluid.
[5] Mullins v. Commonwealth Life Ins. Co., Ky., 839 S.W.2d 245, 248 (1992).
[6] Id. ("When a court resolves a question of duty it is essentially making a policy determination.")
[7] Mann v. Kentucky & Indiana Terminal Railroad Co., Ky., 290 S.W.2d 820, 824 (1955). See also Isaacs v. Smith, supra note 3 at 502 ("[S]uch a duty applies only if the injury is foreseeable.").
[8] See Cooper v. Laboratory Corp. of America Holdings, Inc., 150 F.3d 376, 379-380 (4th Cir.1998) (collecting cases) ("The overall trend is for courts to recognize the existence of a limited duty on the part of the laboratory to employees who are the subject of the tests.").
[9] Amy Newnam & Jay M. Feinman, "Liability of a Laboratory for Negligent Employment or Pre-Employment Drug Testing," 30 Rutgers L.J. 473, 475 (1999).
[10] See Duncan v. Afton, Inc., 991 P.2d 739, 744-745 (Wyo.1999) ("... Afton could foresee that improper collecting and handling of the specimen could contribute to a false positive result and could injure an employee.... [T]he likely effect of a false positive result is significant and devastating; employment will likely be terminated and future prospects of employment adversely impacted."); Stinson v. Physicians Immediate Care, Ltd., 269 Ill.App.3d 659, 207 Ill.Dec. 96, 646 N.E.2d 930, 933 (1995) ("Here, the injury, that the plaintiff would be terminated from his employment, is not only foreseeable, but also is a virtual certainty in the event of a positive drug test result. In addition, the likelihood of injury is great ...."); Lewis v. ALCOA, 588 So.2d 167, 170 (La.Ct.App.1991):

He was not an unknown third party to LSI [Laboratory Specialists, Inc.]. Rather, LSI analyzed Lewis's sample, it was aware that negligent testing on its part could wrongfully identify him as a drug user. LSI was cognizant that if the test results it submitted to ALCOA were inaccurate, both Lewis's reputation and his employment opportunities would be compromised. These damages were directly foreseeable. Thus, as the chance of Lewis being harmed was not remote, extending LSI's liability to encompass him does not create an undue burden upon LSI's freedom of action. Instead, it should foster a greater sense of responsibility within it to perform its drug testing services in a skillful and competent manner.
Id.; Elliott v. Laboratory Specialists, Inc., 588 So.2d 175, 176 (La.Ct.App.1991):
To suggest that LSI does not owe Elliott a duty to analyze his body fluid in a scientifically reasonable manner is an abuse of fundamental fairness and justice. LSI should be held responsible for its conduct. The risk of harm in our society to an individual because of a false-positive drug test is so significant that any individual wrongfully accused of drug usage by his employer is also within the scope of protection under the law.
Mr. Elliott's being labeled an illegal drug user has such emotional economic and career detrimental affects that failure to find protection under our law would be a step backwards for the protection of the individual.
Id.
[11] Yanero v. Davis, Ky., 65 S.W.3d 510, 522 (2001) ("[A]n officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act ....").
[12] KRS 411.184 (emphasis added).
[13] Majority Opinion, supra note at 922 (emphasis added).
[14] Id. at 922.
[15] Northland Insurance Co. v. Truckstops Corporation of America, 914 F.Supp. 216 (N.D.Ill.1995).
[16] Although I believe KRS 411.182(2) provides for apportionment among third-party defendants when the evidence justifies an inference of liability without regard to whether summary judgment has been entered for the third-party defendant on the third-party claim, others have suggested that provisions similar to KRS 411.182(4) might provide a mechanism for including immune parties within apportionment. See Henry Woods, Comparative Fault, Chapter 22:2, Comment to § 6 at 496 (2nd Ed.1997) ("The problem of a wrongdoer who is entitled to a legal immunity could be treated like a released tortfeasor in this Sectionjoin him to the action to determine his equitable share of the obligation and subtract it from the amount of the claimant's recovery.")
[17] KRS 454.040. Trespass, joint or several damages for.

In actions of trespass the jury may assess joint or several damages against the defendants. When the jury finds several damages, the judgment shall be in favor of the plaintiff against each defendant for the several damages without regard to the amount of damages claimed in the petition, and shall include a joint judgment for the costs.
Id. See also Dix & Associates Pipeline Contractors, Inc. v. Key, Ky., 799 S.W.2d 24, 27 (1990).
[18] Prudential Life Ins. v. Moody, Ky., 696 S.W.2d 503, 504 (1985).
[19] Copass v. Monroe Co. Med. Foundation, Ky.App., 900 S.W.2d 617, 619 (1995) ("KRS 411.182 merely addresses the procedure for apportioning liability among parties before the court or who have settled or been released. It does not direct or authorize the adjudication of fault of absent, potential litigators." (emphasis added)).
[20] Baker v. Webb, Ky.App., 883 S.W.2d 898, 900 (1994) ("When the statute [KRS 411.182] states that the trier-of-fact shall consider the conduct of `each party at fault,' such phrase means those parties complying with the statute as named parties to the litigation and those who have settled prior to litigation, not the world at large." (emphasis added)).
[21] Kevin Tucker & Associates Inc. v. Scott & Ritter, Ky.App., 842 S.W.2d 873, 874 (1992) (hereafter " Kevin Tucker & Associates, Inc.").
[22] Id. at 874-5 n. 5.
[23] Ky., 758 S.W.2d 430 (1988).
[24] Id. at 432.
[25] Ky.App., 43 S.W.3d 274 (2001).
[26] Id. at 277 (footnotes omitted).